# CHARLESTOWN.

## State v. Halida.

Submitted September 11, 1886.—Decided September 22, 1886.

1. Neither verbal or grammatical inaccuracies nor the misspelling of words in an indictment are fatal to it, where they do not affect the sense, and where from the whole context the words as well as the meaning can be determined with certainty by a person of ordinary intelligence. (p. 501.)

2. Upon an indictment for simple larceny the State may convict by proving, either that the subject of the larceny was received with a knowledge that it was stolen, or that it was obtained by a false token or false pretence. (p. 503.)

3. Where an indictment consists of two counts, each of which is sufficient as an indictment for simple larceny, the defendant can not require the State to elect and try him on one count only, unless it appears, that the counts charge separate and distinct offences. (p. 502.)

4. In a case tried on such an indictment, after the jury had returned a general verdict of guilty, the court upon being asked by the defendant to have the jury polled as to whether the verdict ap-

plied to both counts, stated to the jury: "I suppose you meant to find the prisoner guilty on both counts," and then directed the poll to be taken, HELD:

. This was not error, which could have prejudiced the defendant in this particular case, and is no ground for reversing the judgment. (p. 504.)

*J. M. Hamilton* for plaintiff in error.

*Alfred Caldwell*, Attorney-General, for the State.

SNYDER, JUDGE:

J. F. Halida was indicted in the circuit court of Calnoun county, on October 17, 1885; he was tried by jury, found guilty, and on February 22, 1886, sentenced by the court to confinement in the penitentiary for two years. There was no demurrer to the indictment, but during the trial the accused took four bills of exceptions, and after the jury returned their verdict he moved the court in arrest of judgment and for a new trial, which motions were overruled and exceptions taken thereto.

The indictment as printed in the transcript before us, contains many grammatical errors, a number of words incorrectly spelled, some of which are simply letters joined together and not words, and apart from the context could not be understood. We have, however, had the original indictment brought before us, and from an inspection of it, I think, there is no difficulty in determining the words used in it. The chirography is certainly very bad and the spelling of some of the words equally bad, but taking the whole context together, I find no difficulty in ascertaining the words used as well as the full meaning of every sentence. In transcribing and printing the transcript, the misspelling has been greatly emphasized and in some instances exaggerated and perverted by converting badly written words into letters which do not make words: For instance, the word written "seventy-five" is printed "sunty-five," and the word "dignity" which is written without crossing the "t" is printed "dignily." It is not difficult for a person of common or ordinary intelligence to read and understand the words and meaning of this indictment. Legible or plain writing is an accom-

plishment not often possessed by even good lawyers; and if courts should make legibility and accurate chirography requisites of valid indictments, prisoners would more often escape tor want of these requisites than by reason of their innocence. The law is well settled that verbal or grammatical inaccuracies, which do not affect the sense, are not fatal. Mere misspelling is not fatal. Whart: Cr. Plead. 2 Pr. § 273; *Shay* v. *People*, 22 N. Y. 317 ; *State* v. *Gilmore*, 9 W. Va. 641 ; *State* v. *Hedge*, 6 Ind. 333. If the sense be clear, nice exceptions ought not to be regarded. And even when the sense or the word may be ambiguous, this will not be fatal, if it is sufficiently shown by the context in what sense the phrase or word was intended to be used. *King* v. *Stevens*, 5 East 244, 260; 2 Halis. P. C. 193; *State* v. *Edwards*, 19 Mo. 674.

The indictment here contains two counts. The first count, leaving out the misspelling and interpreting the language used as the context plainly shows was the intention and as it would be clearly understood by any one reading it, is in effect as follows : That F. J. Halida knowingly intending feloniously to defraud one R. W. Hall of his property, on the —— day of August, 1885, in the county aforesaid, feloniously did knowingly, falsely pretend to him the said Hall, that he, the said Halida, was then and there the owner of a certain two year old colt, and that he would like to trade said colt to said Hall for a dun mule then and there being the property of said Hall and of the value of $75.00, by means of which said false pretence the said Halida did then and there feloniously obtain from said Hall said mule in even exchange for said colt with intent to defraud said Hall; whereas, in truth the said colt did not then and there belong to said Halida and he had no authority or privilege to use, trade or sell said colt ; and whereas, in truth, the said colt so traded and given in exchange to said Hall for said mule, was a stolen animal then and there and then in the possession of said Halida and not his property, he having no right or interest therein and knowing the same to be stolen ; and so the jurors, &c., concluding as an indictment for the larceny of said mule of the value of $75.00.

The second count is in the proper form of an indictment tor the simple larceny of a dun mule of the value of $75.00, the

property of R. W. Hall, the word seventy-five being printed *sunty-five* and written in the original seventy-five.

Before the defendant pleaded, he moved the court to require the prosecuting attorney to try him on but one count of the indictment and elect upon which he would try him. This motion was overruled and the defendant excepted. The first bill of exceptions is to the refusal of the court to require the prosecuting attorney to make such election after the evidence-in-chief for the State had been heard and before any evidence had been offered on behalf of the defendant. None of the evidence heard on the trial of this case is certified in the record, and it does not appear from the face of the indictment that the offence charged in one count was not the same offence charged in a different form in the other count, we must, therefore, according to the rule announced by this Court in *State* v. *Smith*, 24 W. Va. 814, regard the rulings of the circuit court as being correctly made in the exercise of its discretion from the facts before it. If there was any error in said rulings, the defendant, on whom the burden rests to show it, has failed to make it appear by the record and therefore we can not review the matter.

The second bill of exceptions is to the refusal of the court to instruct the jury to disregard the first count in the indictment, on the ground that the same is faulty, because in averring the false pretence the word "designedly" is not used, the right of the defendant to trade the colt is not sufficiently negatived, and the *scienter* is not sufficiently alleged. The sufficiency of this count will be hereafter considered.

The third bill of exceptions is to the refusal of the court to instruct the jury to disregard the second count in the indictment. The objections made to this count are founded on the misspelling of the words "seventy-five" and "dignity" which we have already sufficiently considered.

After the jury had returned their verdict the defendant moved the court to set the same aside, and also to arrest the judgment, because of the insufficiency of the indictment. These motions were each overruled and the defendant excepted. The only grounds on which the indictment is claimed to be insufficient are those stated in the second bill of exceptions and relate to the first count.

The indictment is founded on the statute, which declares: "If a person obtain by false pretence or token from any person, with intent to defraud, money or other property, which may be the subject of larceny, he shall be guilty of the larceny thereof." Sec. 23 ch. 145 Code.

This statute has been considered by the supreme court of Virginia in a number of cases, and it has been there held to be the settled law, "that upon an indictment simply charging larceny, the commonwealth may show either that the subject of larceny was received with a knowledge that it was stolen, or *that it was obtained by a false token or false pretence.*" *Anable's Case,* 24 Gratt. 563, 566; *Lefwitch's Case,* 20 *Id.* 716; *Dowdy's Case,* 9 *Id.* 726.

Both counts in the indictment here are good as counts for simple larceny. *State* v. *Reece,* 27 W. Va. 375. It is therefore not important whether or not the first count is also good as an indictment for obtaining the mule under false pretences, because under the decisions above cited all the evidence which could be introduced to sustain an indictment for obtaining the mule by false pretences can also be introduced in support of an indictment for simple larceny, the legal offence as well as the punishment in both cases being precisely the same. *Dull's Case,* 25 Gratt. 965; *Fay's Case,* 28 *Id.* 912.

But it seems to me, that the first count is also sufficient as an indictment for obtaining the mule by false pretence. That it is such, I think, is fully shown by the decision of this Court in *State* v. *Hurst,* 11 W. Va. 54. The indictment in that case, in respect to charging the offence, is substantially the same as it is here. It is true, here the word "designedly" is not used, but the word "knowingly," which is used, taken in connection with the word "falsely" by which it is immediately followed, is sufficiently comprehensive to fulfil the requirements of the law, without using also the word "designedly." The pretence could not be knowingly false without at the same time being designedly false. The *scienter* or knowledge is the essential element by which the act or pretence is to be judged and characterized. In *Commonwealth* v. *Hulburt,* 12 Metc. (Mass.) 446, the charge was that, "the defendant designedly and unlawfully did falsely pretend," &c., omitting the word "knowingly;" and the indictment

was nevertheless sustained. The word "knowingly," I think, is at least the equivalent of the words "designedly and unlawfully," and therefore, the latter being sufficient without the former, the former must be sufficient without the latter. I see nothing in the objection, that this count does not sufficiently negative the right to trade the colt. It is alleged that the colt was stolen property and the defendant knew it, and in addition to this, it is charged that the colt was not the property of the defendant "and he then and there having no authority or privilege to use, trade, barter or sell" it. This latter is not in the form of a direct charge and therefore might not, of itself, be sufficient, but following as it does the direct charge that the colt was stolen property and the defendant knew this fact, it might be treated as surplusage without affecting the validity of the indictment. The law would presume, that a person, having in his possession property which he knew to be stolen property, had no authority to trade or sell it. But be this as it may, the indictment being good, as we have seen, for the offence of simple larceny, the court did not err in refusing to arrest the judgment, nor in overruling the motion for a new trial because of the insufficiency of the indictment.

The only other exception is that contained in the fourth bill of exceptions, wherein it is stated, after the jury had returned into court with their verdict and the same had been read by the clerk, the defendant's counsel moved the court to interrogate the jury, whether or not they meant to find the prisoner guilty on both counts of the indictment, and before doing so the court said : "I suppose, gentlemen of the jury, you meant to find the prisoner guilty on both counts," and then directed the poll to be taken, and in taking the same one of the jurors responded, "as I understand it we had no jurisdiction of the second count," and the court replied that they had; the said juror then said the verdict was his on both counts. To these remarks of the court the defendant excepted.

I can not see how these remarks could have prejudiced the defendant. The circuit court had held both counts of the indictment good and refused to require the State to elect or try the defendant on but one of the counts. This Court has

affirmed these rulings of that court; the defendant was therefore tried on both counts. The verdict was a general one and had been returned and read before any remark was made. The court and not the jury finds the punishment. So that, it seems to me, the jury having found and delivered their verdict without any expression from the court, it could make no difference whatever to the defendant whether he was found guilty on one or both counts, there being no claim that both counts were not for the same offence. The first remark of the court therefore, while it might be improper in some cases and ought not to have been made even in this, still as we can see from the record in this case that it coud not have prejudiced the defendant, it affords no ground for disturbing the verdict. The second remark of the court to to the jury was not objectionable. It was simply a statement of the law which it had before declared when it overruled the defendant's motion to require the State to try the case on one count of the indictment only. As a matter of law the defendant was tried on both counts and the court had the right to so tell the jury.

Upon the whole record, I see no error to the prejudice of the defendant and the judgment must therefore be affirmed.

AFFIRMED.