# CHARLESTON.

## STATE v. DUTCH GOLDSTROHM.

### Submitted April 29, 1919.   Decided May 6, 1919.

1. INDICTMENT AND INFORMATION—*Former Conviction—Identity of Party—Allegation.*

   Where an indictment for a felony alleges a former conviction and confinement in the penitentiary, as provided in section 23, Ch. 152, Code, it is sufficient if the indictment avers the former conviction with such particularity as reasonably to indicate the nature and character of the offense, and identifies the person subsequently indicted as the person then convicted. The latter requirement is sufficiently met where the indictment, after setting forth the former conviction of D. G., describes the person now indicted as "the said D. G., having been so convicted of felony as aforesaid." (p. 130).

2. CRIMINAL LAW—*Indictment and Information—Former Conviction —Allegations—Burden of Proof.*

   Nor need the indictment contain an averment that the former conviction has not been vacated, set aside or reversed. If such be the case, the burden rests upon accused to establish the fact by proof offered upon the trial. (p. 130).

3. SAME—*Receiving Stolen Goods—Knowledge—Evidence.*

   Upon the trial of an indictment for buying or receiving stolen property, knowing it to have been stolen, such knowledge is an essential element of the offense, and, as bearing upon that question, evidence of the conduct and statements of defendant in reference to stolen property in his possession and explanatory of the reason and character of such possession, if made while such possession continues, and especially if offered at a time when he is first called

upon by the circumstances of the case to make such explanation, is admissible both for and against him. (p. 134).

4. SAME—*Knowledge—Evidence.*

. . The theory of the admissibility of such evidence is that the statements which accused has made characterizing or describing his possession, while it continued, partake to some extent of the nature of an explanation of the circumstances connecting him with the criminal act. (p. 134).

5. SAME—*Explanation—Weight of Evidence.*

The jury may accord to such evidence the weight they may deem it entitled to when considered in connection with other facts and circumstances proved upon the trial. (p. 134).

6. SAME—*Bill of Exceptions—Signature.*

A bill of exceptions must be signed by the judge of the trial court, else the matter it contains cannot be considered in the appellate court. (p. 138).

(MILLER, PRESIDENT, absent).

Error to Circuit Court. Wood County.

Dutch Goldstrohm was convicted of receiving stolen goods under an indictment alleging his former conviction of a similar offense, and he brings error.

*Reversed, and remanded for new trial.*

*Geo. H. Harris, R. E. Bills* and *Chas. E. Hogg,* for plaintiff in error.

*E. T. England,* Attorney General. *Charles Ritchie,* Assistant Attorney General, and *James S. Wade,* for the State.

LYNCH, JUDGE:

To a judgment of conviction and confinement in the penitentiary upon an indictment charging him with the receipt of stolen property with knowledge of the larceny thereof, Dutch Goldstrohm obtained this writ. Though the assignments of error are numerous, defendant has elected to rely exclusively upon two only, deeming them to be the issues most vital for the purpose of this review, and with these and none other does this discussion deal. There is no substantial merit in the others, as counsel virtually concede, and they involve no new legal questions.

He first challenges the sufficiency of the indictment, par-

ticularly the averments pertaining to an alleged former conviction for a similar offense, namely, the larceny of property. Of the similarity of these two offenses, though not material under section 23, ch. 152, Code, there is no question, nor can there be any. Though the offense of buying or receiving stolen goods, knowing the same to have been stolen, is in point of time and participation only one degree removed from the actual asportation or theft thereof, yet the connection between the two is so close and the relation so intimate that the legislature deemed it expedient to prescribe the same penalty for each of them. For if any person buy or receive from another or aid in concealing stolen goods or other thing, knowing the same to have been stolen, he is to be dealt with as if he were the real thief. Section 18, ch. 145, Code. Likewise, if he is indicted for a simple larceny and upon the trial it appears that he did not actually steal the property but did receive it with knowledge of the theft, he is nevertheless guilty of the larceny and amenable to the same penalties. *Price* v. *Com.*, 21 Gratt. 846; *State* v. *Halida,* 28 W. Va. 499. This is also true where a man is indicted for a simple larceny of a thing under section 23, ch. 145, Code, and the proof shows that he obtained it under a false pretense or representation with intent to defraud (*State* v. *Halida, supra; State* v. *Edwards,* 51 W. Va. 220, 229: *State* v. *Williams,* 68 W. Va. 86) ; or under section 19, ch. 145, Code, and the proof shows embezzlement by defendant of the property alleged to have been stolen. *State* v. *DeBerry,* 75 W. Va. 632; *Swick* v. *Bassell,* 77 W. Va. 78; *Pitsnogle* v. *Com.,* 91 Va. 808. In other words, upon an indictment simply charging larceny the state may show either that the subject of the larceny was received with knowledge that it was stolen, or that it was obtained by a false pretense with intent to defraud, or was obtained by embezzlement. So that the rules of evidence applicable to simple larceny apply alike so far as pertinent to each of these various offenses against the proprietary rights of the owner.

After an adverse ruling upon his motion for a continuance, defendant on April 29 tendered and the court accepted and entered of record the general issue plea, which three days later he moved for leave to withdraw and also moved to quash

the indictment, both of which motions the court overruled. This action did not operate to his prejudice or to deprive him of any legal right if the indictment contains sufficient averments to meet the criticisms urged against it. These are, first, the failure to identify defendant as the person proceeded against for the two offenses described in the indictment, that is, the larceny, committed by him in April, 1909, for which he was convicted in September of the same year, and the receipt of the property alleged to have been stolen in February, 1918, of the conviction of which he now complains; and, second, the failure to aver that the former judgment of conviction still is in full force and effect and not in any manner reversed or made void.

Upon the question of identification there is no substantial basis for the existence of any doubt. There is no direct or positive averment that the accused is the same person who committed both felonies, nor does the form of indictment prescribed by Archbold, Crim. Pr. & Pl., p 1680, require such an averment. Omitting the usual phraseology, the form prescribed by the author shows by way of identifying the accused that he (A. B.) was presented by a former grand jury for a felony, as by the record of the indictment more fully and at large appears, and that the said A. B., after having been so convicted etc., afterwards committed another felony etc. In this respect there is not any substantial difference between the two formal accusations, though the one now before us is more elaborate, as it sets forth *in extenso* the felonious charge upon which defendant was convicted in 1909, and describes him as "said Dutch Goldstrohm" pursuant to the form prescribed by Archbold, thereby making perfect the identity of the person concerned, which was further substantiated by proof upon the trial. Further amplification in this regard is not required. It is sufficient if the indictment avers the former conviction with such particularity as brings the accused within the terms of the statute (section 23, ch. 152, Code) providing for the additional punishment sought by the prosecution and imposed by the judgment, and identifies the offenses by a description of their nature and character. *Wilde* v. *Com.*, 2 Met. (Mass.) 408; *State* v. *Robinson*, 39

Me. 150. Technical accuracy in this respect is not required. *State* v. *Wentworth*, 65 Me. 234; *State* v. *Small*, 64 N. H. 491.

· Upon the second point of challenge we hold the indictment also good beyond question, although it does depart from the old forms in that it omits the averment that the judgment is still in full force and effect, and not in any manner reversed or made void. The Supreme Court of Virginia in dealing with a statute of which ours is a duplicate justified a conviction upon an indictment not containing such clause, though apparently no question was raised as to its sufficiency. *Stover* v. *Com.*, 92 Va. 780. As to the facts necessary to be averred see Underhill, Crim. Ev. (2d Ed.), § 510. This author at section 514 says: "The state is not bound to prove as part of its case that the prior conviction has not been vacated, set aside or reversed, and if such be the case the burden of proof is on the accused." *Tall* v. *Com.*, 33 Ky. L. 541. The Supreme Court of Minnesota cites with approval and adopts the rule laid down by Underhill, and adds what seems to us to be just and reasonable: "The judgment appearing fair upon its face, the presumption arises that it was at the time of the trial still in force and effect." *State* v. *Findling*, 123 Minn. 413.

Defendant seriously, and properly we think, according to the great weight of authority, complains of the rejection of the testimony of himself and police lieutenant Fleming relative to a conversation had between them regarding defendant's possession of the property alleged to be stolen and the manner of his acquiring it, as throwing light upon the question of his knowledge of the theft thereof at the time of its acquisition by him.

It is well settled that when a larceny is complete the voluntary abandonment of the property by the thief, no matter how soon after the larceny, is no defense. *State* v. *Chambers*, 22 W. Va. 779; *Whalen* v. *Com.*, 90 Va. 544; 3 Greenleaf on Evidence (15th Ed.) § 156. Hence if it can be established that defendant bought and received the goods in this case knowing them to be stolen, the offense was complete from that moment, and the voluntary return thereof to Fleming would, therefore, be no defense. However, it is an essential ele-

ment of the crime that the accused received the goods know-
ing them to have been stolen, and that being a disputed
question, defendant claims the right to show his voluntary
tender of the property to the officer and certain statements
made to him at that time as evidence having some bearing
upon the question whether he knew they were stolen at the
time he purchased them. The purpose of the evidence is
to show that the offense was not complete because of the ab-
sence of a material element, and not to justify or make
amends for an offense already complete by an attempted vol-
untary surrender of the property after discovery. It is
only on the basis of this first ground, if at all, that the evi-
dence is admissible.

The property received and purchased by defendant, con-
sisting of a valuable lorgnette, chain and revolver, was ob-
tained by the two boys, the vendors and chief witnesses
against him, from a residence burglarized by them in the city
of Parkersburg shortly prior to the transaction between
them and him. The burglary and theft the boys admit, and,
according to the testimony of one of them, not confirmed by
the other, and denied by defendant, defendant was informed
of the burglary and larceny before he received the property.
His knowledge of the larceny is the essence of the offense
charged. Unless he knew or had good cause to believe when
he bought the property that it had been stolen, he has not
violated the statute concerning the receipt of stolen prop-
erty. Its very terms make such knowledge an essential and
constituent ingredient of the offense. Conversations relative
to the transaction and had at the time the authorities uni-
formly say may be proved either for or against the accused.
*People* v. *Dowling,* 84 N. Y. 478; *State* v. *Bethel,* 97 N. Car.
459; *State* v. *Dellwood,* 33 La. Ann. 1229. What was said
by him or to him at that time having any probative value
is admissible as showing knowledge and intent at the time
of the receipt of the stolen goods. Also, where a person when
arrested is in possession of property charged to have been
stolen, his statements and declarations made at the time of
the arrest and relating to the transaction are, according to
some authorities, part of the res gestae and admissible in

evidence. *State* v. *Jacobs,* 133 Mo. App. 182; *Mitchell* v. *Oklahoma,* 7 Okl. 527; *Smith* v. *Oklahoma,* 14 Okl. 518.

Nor is the proof limited, according to the great weight of authority, to the initial transaction and to the conduct and declarations of the accused at the time of his arrest, but, as said by Underhill in his work on Criminal Evidence (2d Ed.), recognized as being reliable and often cited: "Any declaration made by the accused explaining the reason or character of his possession, if made while it lasts, is admissible as a part of the res gestae for or against him. * * The declaration must have been uttered at the first moment he was expressly or by necessary implication called on to explain." (Section 302). The syllabus in *State* v. *White,* 77 Vt. 241, cited and relied on by counsel for defendant, says: "In a prosecution for stealing a team the respondent's declaration that the team was not his own but was a hired team, made while the property was in his possession and before he knew that any suspicion attached to him or that any search had been initiated, is admissible in his favor." There are many other cases supporting the same proposition and permitting the introduction in evidence of the acts and declarations of defendant in reference to stolen property in his possession, and explanatory of the reason and character of such possession, both for and against him, if made at any time while such possession continues, and especially if offered at a time when he is first called upon by the circumstances of the case to make such explanation. *Com.* v. *Rowe,* 105 Mass. 590; *Payne* v. *State,* 57 Miss. 348; *State* v. *Fitzgerald,* 72 Vt. 142; *Martin* v. *State,* 44 Tex. Cr. Rep. 528; *Walker* v. *State,* 28 Ga. 254; *State* v. *Young,* 41 La. Ann. 94; *Mason* v. *State,* 171 Ind. 78; *Smith* v. *State,* 103 Ala. 40; *Hubbard* v. *State,* 107 Ala. 33; *Bryant* v. *State,* 116 Ala. 445; 3 Wigmore on Evidence, §1781; Underhill on Criminal Evidence, (2d Ed.), § 302.

The possession by the accused of goods recently stolen, unexplained by him, though perhaps in this state not prima facie evidence that the possessor is the thief (*State* v. *Heaton,* 23 W. Va. 773; *State* v. *Reece,* 27 W. Va. 375), is at least proper to be considered by the jury in connection with other

evidence and circumstances appearing on the trial, among them conduct and declarations of the defendant which are inconsistent with his claim of innocence. In admitting the declarations of the defendant which are in his favor, made while he still retains possession of the property, the courts have probably been influenced by the desire to give the benefit of statements sustaining his contention when they refer to and explain the reason and character of his possession of the property, especially if offered at a time when he is first called upon by the circumstances of the case to make such explanations, to offset the advantage the state otherwise would have in using those of his statements which are adverse to him. The statements which he has made characterizing or describing the nature of his possession, while it continued, partake to some extent of the nature of an explanation of the circumstances connecting him with the criminal act, and this it seems is the more reasonable basis on which to rest the doctrine of admissibility in such cases, not that the declaration is a part of the res gestae, as some of the decisions say. Certainly declarations made at the time of the original transaction are a part of it and therefore within the scope of the latter rule. But it is difficult to perceive how they can be within that rule when the declarations were made long after the transaction closed, although while the wrongful possession continued. Wigmore on Evidence, § 1781 (4).

Respecting the evidentiary character of the mere fact of possession of stolen goods, the author says (§ 1781 (4) ): "Now the inference from the fact of possession will be stronger or weaker according as the possession was not or was in good faith; if a possession in good faith can be made to appear, the inference that the possessor was himself the robber or the thief or the knowing receiver can hardly be strong. Thus the total significance of the act of possession becomes material; and upon the principle of verbal acts (ante, § 1772), the utterances of the person while in possession may be received as verbal acts (or, in the common judicial phrase, as 'explanatory of possession'), though not as hearsay assertions to evidence the fact asserted. On this principle it would be immaterial what the tenor of the ut-

terance was,—whether a claim or a disclaimer of ownership, or an explanation of finding or of purchase or of borrowing, provided only it indicated the intent of the possession. It would also be immaterial that it was made before arrest, or discovery of the goods, or claim made, or suspicion raised, or that it was made after arrest or discovery or claim or suspicion, provided only that it was made during possession.'' See also Wigmore on Evidence, vol. 3, § 1732 (2), pp. 2229-2230. Clearly the authorities favor the admission of such evidence, though there are decisions to the contrary.

What, then, is the rejected testimony and the force and effect to be attributed to it when admitted, as we think it should be upon a retrial of the case ordered. There were various phases of the offers that were refused, and as all of them are governed by the same evidentiary rule it is necessary to discuss only one of these phases. The lorgnette, chain. and automatic pistol were taken from the residence of W. C. Patterson, not by defendant, but by the two boys who sold the property to him soon thereafter. The witness Fleming, having stated his recollection as to the date of the burglary of the Patterson residence, was asked when with reference to the burglary the property stolen was delivered to him by defendant. This question the court refused to permit the witness to answer, as the court did also with respect to a similar question propounded to defendant as a witness in his behalf. As neither of them was permitted to answer in his own language, we do not know what they would have said and must therefore rely upon what counsel proposed to prove by them. This was his proffer: ''We want to show that as soon as the defendant learned that the Patterson home had been entered and these boys accused of stealing this property, the defendant immediately went to the lieutenant of police, Fleming, and turned the property over to him, and said he was afraid it was stolen property.'' Nor was Fleming permitted to state whether he went to defendant or defendant came to him in regard to the property, or how Fleming learned that the lorgnette, chain and gun were in defendant's possession. Clearly this proof was admissible.

The testimony of the two boys introduced by the state as

witnesses to show his knowledge was complete and positive, and, if true, plainly showed the full knowledge of the defendant respecting the ownership of the goods. Of course he denied all knowledge, and as bearing upon that question the acts and statements of the accused made while the goods were yet in his possession explaining the reason and character of such possession are material. If he conceals the goods and makes evasive or contradictory answers respecting them, that is evidence for the state. Similarly he should not be denied the benefit of those of his acts and statements which are in his favor. The jury can determine the weight to be accorded them. In this case the evidence to show defendant's knowledge is clear and positive, and it may well be that, when he learned that the boys from whom he bought the goods were accused of the robbery, desiring to manufacture evidence in his favor, he turned the goods over to the officer with the statement that he was afraid they were stolen. Furthermore, that statement may not necessarily be inconsistent with his prior knowledge of their stolen character, for even if he had known from the beginning the truth concerning the goods, he still could have made the same statement to the officer. However the fact may be, it is peculiarly within the province of the jury to determine as a question of veracity between the prosecuting witnesses and defendant,

What probative value is to be attached to the testimony when admitted is for the jury to answer by their verdict. It is not conclusive and counsel for defendant do not claim that it is. The jury may accord to it much, little or no weight when called upon to consider it in connection with the other facts and circumstances proved upon the trial. They may deem it sufficient to justify a verdict for defendant; they may deem it a mere exculpatory and unreliable story concocted to meet the exigencies of a serious situation, and give it little credence. What view they shall accept or adopt neither this court nor the trial court has authority or power to say in the first instance.

Some contention has arisen as regards instructions given or refused, but the action thereon is not reviewable because, though copied into the record in the form of an appendix,

they are not made part of the record by a bill of exceptions signed by the judge presiding at the trial.   He declined to certify such a bill because no objection or exception was taken at any time before, during or after the trial or before the close of the term at which the trial took place.   Hence we do not consider them.   *Adkins* v. *Globe Fire Insurance Co.*, 45 W. Va. 384; *Core* v. *Marple*, 24 W. Va. 354.

Perceiving no other error, we reverse the judgment only because of the erroneous rejection of admissible evidence, and remand the case for retrial.

*Reversed and remanded for new trial.*