373 S.E.2d 173

**STATE of West Virginia**

v.

**Nathan MASTERS.**

**No. 18099.**

Supreme Court of Appeals of
West Virginia.

Sept. 16, 1988.

Mark A. Karl, Moundsville, for Nathan Masters.

Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Justice:

The defendant, Nathan Masters, was convicted of grand larceny in the Circuit Court of Wetzel County. In a subsequent recidivist proceeding, he was also convicted by a jury of having been previously convicted of a felony and an enhanced five years was added, under W.Va.Code, 61–11–18, to give him a one-to-fifteen year prison sentence. On appeal, he contends that the evidence was insufficient to prove his guilt of grand larceny and that the evidence did not establish beyond a reasonable doubt that the property stolen had a value of $200 or more. He also maintains that the recidivist information, which contained the wrong criminal docket number for the prior felony, should have been dismissed as fatally defective. Finding the evidence sufficient to support the defendant's convictions and the absence of any error affecting the defendant's substantial rights, we affirm.

### I.

The evidence viewed in the light most favorable to the prosecution shows that a video cassette recorder (VCR) and carrying case were stolen from Video View, a retail business located in Wetzel County, on February 5, 1986. The owner of the business, Andrea Wilt, testified that the business premises was located in a three-room building with the check-out counter in the middle of the room. The VCR's and carrying cases were kept in the room on the east side of the building.

At about 6:55 p.m. on the day of the theft, an inventory was taken which revealed that seven VCR's were available for rental. A few minutes later the defendant and his girlfriend, who were fairly frequent customers, entered the store. The defendant asked to use the restroom and later went into the east room where the VCR units were located. While the owner was seated, doing paperwork behind a counter, she noticed the defendant leaving the store. She was only able to see the back of his head. The defendant returned to the store shortly thereafter. The defendant and his girlfriend then rented four movies and a VCR and left the store. During this time period, only one other customer had been in the store and he had not gone into the east room where the VCR units were kept, according to Ms. Wilt.

Immediately after the defendant and his girlfriend left, the owner began closing the store. Before she turned off the lights, however, she happened to notice that only five VCR units were left in stock and a carrying case was also missing. The next day when the defendant returned the movies and rented VCR, the owner mentioned the missing VCR and case to the defendant. Later that day she discussed the matter with the defendant on the telephone. She also had telephone conversations that day with the defendant's mother and his girlfriend who wanted to pay for the VCR, but did not have the money at that time. The owner testified that the last time the defendant called that day, he said "he would do his best to get the machine back to me" and would have the machine back or the money "by Tuesday." When the VCR was not returned, the owner reported the incident to the police and the defendant was subsequently arrested.

The owner also testified as to the value of the property taken, explaining that she had purchased some seventeen Quasar VCR units and cases about one year prior to the theft. She paid a wholesale price of $370 per VCR and $40 per case. On three recent occasions, she had sold used VCR's to friends for $200 each, without the case, both before and after the theft. She valued the missing VCR and case at $299.95.

The State also introduced the testimony of the owner's sixteen-year-old daughter

who stated that she had overheard the defendant's telephone conversation with her mother on a telephone extension and confirmed that the defendant had offered to return the VCR or to pay for it.

The defense called as a witness a certified property appraiser and antique dealer. He testified that a used VCR and case similar to the one missing from the video store was worth less than $200. He placed the wholesale value of similar VCR's at between $100 and $125 and the retail value at $199.95. He also stated that a new VCR of similar quality with a case could be purchased for $199.95, and that in his expert opinion the value of the missing VCR and case was between $125 and $175.

The expert witness admitted on cross-examination, however, that the value he had testified to would have been for a used VCR without a warranty. The missing VCR was still under warranty. The expert also admitted that he had made no investigation of the prices that VCR's were selling for locally and that he had not examined the owner's remaining VCR's in arriving at his estimate of approximate value.

The defense also presented the testimony of the defendant's mother who stated that she had overheard her son say on the telephone that he had not stolen the VCR, but would nonetheless pay for it in order to avoid having his probation revoked. The defendant testified in his own behalf, corroborated his mother's testimony, and denied taking the property. The defendant testified that he had left the store to get his girlfriend's cigarettes from the car, but quickly returned upon realizing he did not have the car keys. His girlfriend then gave him the keys, and he left the store for a second time and returned with the cigarettes. The defendant's girlfriend corroborated his testimony and also testified that only the one rented VCR had been taken from the video store.

Upon the jury's finding the defendant guilty of grand larceny, the prosecuting attorney filed a recidivist information. It alleged the defendant had previously on May 15, 1985, pled guilty to a felony, namely the felonious possession with intent to deliver a Schedule I controlled substance. The information, however, gave an incorrect criminal docket number, No. 85–F–12 instead of 85–F–20.

Prior to the recidivist trial, the defense moved to dismiss the recidivist information on the basis of the incorrect criminal docket number. The court denied the motion.

## II.

■■■ We address first the defendant's sufficiency of the evidence argument. Our familiar appellate standard of review is stated in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

In circumstantial evidence cases, such as in this case, we adhere to the rule stated in Syllabus Point 2 of *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979):

"Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction."

*See also* Syllabus Point 1, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980); Syllabus Point 2, *State v. Hunter*, 103 W.Va. 377, 137 S.E. 534 (1927).

We believe that sufficient evidence was introduced at trial to convince an impartial jury of the defendant's guilt beyond a reasonable doubt, and that the evidence was not manifestly inadequate. Furthermore, we are persuaded that the circumstantial

evidence was such that the jury could rationally conclude that it showed more than mere suspicious circumstances pointing to the defendant's guilt and was sufficient to exclude every reasonable hypothesis consistent with his innocence.

While the evidence was conflicting on both the defendant's guilt of the larceny and on the value of the personal property taken, the jury had enough evidence before it to prove the defendant's guilt beyond a reasonable doubt. It was for the jury to decide the credibility issues and to resolve the conflicts in the evidence. The testimony of the owner of the store, together with the testimony of her daughter, was sufficient to establish the defendant committed the larceny. The testimony of the owner concerning the value of the property when purchased and of recent sales prices was sufficient to permit the jury to find the defendant guilty of taking property having a value of $200 or more.[1]

As the State points out, this Court has recognized that "[o]wner testimony is generally competent to establish the value of stolen property." *State v. Jacobs*, 171 W.Va. 300, 305, 298 S.E.2d 836, 842 (1982); *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982); *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976). In this case the owner, through her VCR business, had special knowledge on the value issue. With regard to the defendant's value expert, we have recognized that "[t]he testimony of expert witnesses is not exclusive and the jury has the right to weigh the testimony of all witnesses, experts and otherwise." *State v. Wimer*, 168 W.Va. 417, 428, 284

S.E.2d 890, 896 (1981), *quoting Middle-West Concrete Forming & Equip. Co. v. General Ins. Co. of Am.*, 165 W.Va. 280, 287, 267 S.E.2d 742, 747 (1980).

### III.

■ Finally, counsel for the defendant argues that the criminal docket number of the prior felony conviction is an essential averment in a recidivist information. The prosecution complied with the requirement of W.Va.Code, 61–11–19,[2] that the defendant be given notice of the prior felony conviction during the term of the principal felony conviction. *See State v. Cain*, 178 W.Va. 353, 359 S.E.2d 581 (1987). This information charged that the defendant had pled guilty to the felonious possession with intent to deliver a Schedule I controlled substance on May 15, 1985.

W.Va.Code, 61–11–19, does not require the prosecution to include the criminal docket number of the prior felony conviction in the information. The purpose of the statutory requirement of a written allegation concerning the previous conviction or convictions is to give the defendant reasonable notice so he can intelligently determine how to respond and prepare a defense to the recidivist charge.[3] The two key elements in a recidivist proceeding are proof of the prior felony conviction, and proof that the defendant is the person who was convicted of that felony. *See State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980); *State ex rel. Mounts v. Boles*, 147 W.Va. 152, 126 S.E.2d 393, *cert. denied*, 371 U.S. 930, 83 S.Ct. 298, 9 L.Ed.2d 235 (1962). We spoke to this question in *State*

---

1. Under W.Va.Code, 61–3–13(a), larceny is punished as follows: "If any person commits simple larceny of goods or chattels of the value of two hundred dollars or more, such person shall be guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be confined in a penitentiary not less than one nor more than ten years...."

2. W.Va.Code, 61–11–19, provides in part:
   "It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon

conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and *upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each,* shall require the prisoner to say whether he is the same person or not." (Emphasis added).

3. *E.g., State v. Melear*, 63 Haw. 488, 630 P.2d 619 (1981); *McConnell v. State*, 436 N.E.2d 1097 (Ind.1982); *State v. Williamson*, 342 N.W.2d 15 (S.D.1983).

*v. Goldstrohm,* 84 W.Va. 129, 99 S.E. 248 (1919), where we said in Syllabus Point 1, in part:

> "Where an indictment for a felony alleges a former conviction and confinement in the penitentiary, as provided in section 23, c. 152, Code 1913 (sec. 5480), it is sufficient if the indictment avers the former conviction with such particularity as reasonably to indicate the nature and character of the offense, and identifies the person subsequently indicted as the person then convicted." [4]

Much the same rule has been followed in our later cases involving driving under the influence where a second or third offense is charged and the prior offenses are set out in the indictment. We summarized this rule in Syllabus Point 3 of *State v. Loy,* 146 W.Va. 308, 119 S.E.2d 826 (1961):

> "An indictment alleging a prior conviction for the purpose of augmenting the sentence to be imposed, is sufficient, as to such prior conviction, if it avers the former conviction with such particularity as to reasonably indicate the nature and character of the former offense, the court wherein the conviction was had and identifies the person so convicted as the person subsequently indicted."

*See also State v. Boggess,* 163 W.Va. 320, 256 S.E.2d 325 (1979). *See generally,* 39 Am.Jur.2d, *Habitual Criminals and Subsequent Offenders* § 21 (1968).

Here the defendant was clearly and plainly advised of the offense charged. There is no claim that he was hampered in preparing a defense because of the lack of adequate notice. The erroneous criminal docket number did not adversely affect any substantial right of the defendant and must be disregarded as harmless error under Rule 52(a) of the West Virginia Rules of Criminal Procedure.[5] This is in accord with the general rule stated in Syllabus

Point 5, in part, of *State v. Davis,* 153 W.Va. 742, 172 S.E.2d 569 (1970):

> "A verdict of guilty in a criminal case will not be reversed by this Court because of an error ... unless the error is prejudicial to the accused."

*See also,* Syllabus Point 3, *State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982).

For the foregoing reasons, the judgment of the Circuit Court of Wetzel County is affirmed.

AFFIRMED.

---

**4.** *Goldstrohm* was decided under our former recidivist statute which required the prior offenses to be set out in the indictment for the present offense. W.Va.Code, 61–11–18 to –19 (1931). However, the legislature in 1943 adopted the current practice of filing an information after conviction setting out the prior

felonies. 1943 W.Va. Acts ch. 31. W.Va.Code, 61–11–19 (1943).

**5.** Rule 52(a) of the West Virginia Rules of Criminal Procedure states that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."