740 S.E.2d 493

**The STATE, Respondent,**

**v.**

**Lawrence BROWN, Appellant.**

**Appellate Case No. 2011–193606.**

**No. 27231.**

Supreme Court of South Carolina.

Heard Jan. 9, 2013.
Decided March 13, 2013.

Deputy Chief Appellate Defender Wanda H. Carter of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Mark Reynolds Farthing, all of Columbia, and Solicitor Ernest Adolphus Finney, III of Sumter, for Respondent.

Chief Justice TOAL.

Lawrence Brown (Appellant) challenges his conviction for grand larceny of two motor vehicles in violation of section 16–13–30 of the South Carolina Code. We affirm.

## FACTUAL/PROCEDURAL HISTORY

In April 2010, Appellant contacted Don's Car Crushing (Don's), a business that crushes cars for scrap metal, and indicated that he owned several vehicles he wanted to sell. A tow truck operator for Don's, Dakota Cooper (Cooper) con-

tacted Appellant to arrange a meeting. Appellant told Cooper where to meet him in Salters, South Carolina. Cooper testified that the location where he met Appellant appeared to be a salvage yard. Appellant explained to Cooper that his father had recently died and that Appellant had to take care of the property, including removal of up to seventy-five vehicles stored on the property. Appellant and Cooper negotiated for the sale of four vehicles. Appellant and Cooper executed a Bill of Sale for the four vehicles, but Cooper only took possession of two vehicles: a 1989 Chevrolet Corsica and a 1987 Ford Taurus. Cooper agreed to return the following day to retrieve the remaining two vehicles covered under the original Bill of Sale, and possibly purchase other vehicles on the property for approximately $2,400.

Later that day, Lawrence Williams (Lawrence) came to the location where Cooper and Appellant made their transaction. Lawrence's uncle, Robert Williams (Robert), owned the property. Lawrence noticed the Ford Taurus, which he owned, and the Chevrolet Corsica, which belonged to Robert, were missing. Lawrence called Robert and asked whether he moved the vehicles. When Robert replied that he did not, Lawrence notified police and reported the vehicles stolen.

Cooper returned the next day but could not locate Appellant. Cooper telephoned Appellant, and Appellant stated he would arrive in thirty minutes. However, after forty minutes and another telephone call, Appellant did not arrive. Cooper then approached the house on the property, and Lawrence met him at the front door. Cooper informed Lawrence that he was there to retrieve the remaining cars he agreed to purchase from Appellant. Lawrence refused, and notified police, who interviewed Cooper and obtained Appellant's name and driver's license number. Police arrested Appellant and charged him with grand larceny for the theft of the two vehicles. Meanwhile, Don's had already crushed both vehicles; thus, neither could be returned or recovered.

On May 5, 2011, the Williamsburg County Grand Jury indicted Appellant for two counts of grand larceny. Appellant did not appear at trial, and the trial proceeded in his absence. At the close of the State's case, Appellant's trial counsel moved for a directed verdict. According to Appellant's trial

counsel, the State failed to prove that the value of either vehicle exceeded $1,000. The trial court denied Appellant's motion. The trial court then charged the jury on the elements of grand larceny, including the State's burden of proving that the value of the stolen property exceeded $1,000. Appellant's trial counsel did not object to the trial court's instruction.

On May 12, 2011, the jury found Appellant guilty and the trial court sentenced Appellant to five years' imprisonment on one of the grand larceny convictions, and a consecutive sentence of three years' imprisonment for the other conviction.

Appellant appealed his convictions, and this Court certified the case for review pursuant to Rule 204(b), SCACR.

## ISSUES PRESENTED

I. Whether the amendment to section 16–13–30 of the South Carolina Code should be applied retroactively to Appellant's case.

II. Whether the trial court erred in denying Appellant's motion for a directed verdict.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). This Court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). On appeal from the denial of a directed verdict, this Court must view the evidence in the light most favorable to the State. *State v. Lollis*, 343 S.C. 580, 583, 541 S.E.2d 254, 256 (2001). The defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McHoney*, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001). However, if there is any direct or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury. *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). A circuit judge should grant a directed verdict motion when the evidence merely raises a suspicion

the accused is guilty. *State v. Schrock*, 283 S.C. 129, 132, 322 S.E.2d 450, 451–52 (1984).

## DISCUSSION

### I. Retroactive Application of Amendment to Section 16–13–30 of the South Carolina Code

Appellant argues that the amendment to section 16–13–30 of the South Carolina Code should be applied retroactively to the instant case.[1] We disagree.

 In the instant case, the trial court instructed the jury on the elements of grand larceny as section 16–13–30 provided at the time Appellant committed the offense, and not the elements of section 16–13–30 as amended at the time of his indictment or conviction. However, Appellant's trial counsel stated explicitly that he had no objection to the trial court's instruction. Thus, Appellant's argument that the trial court erred in failing to apply section 16–13–30 as amended is unpreserved.[2] However, we analyze Appellant's argument for the education of the bench and bar.

Appellant committed the grand larceny in April 2010. At the time, section 16–13–30 provided, in pertinent part:

(B) Larceny of goods, chattels, instruments, or other personalty valued in excess of *one thousand dollars* is grand larceny. Upon conviction, the person is guilty of a felony and must be fined in the discretion of the court or imprisoned not more than:

(1) five years if the value of the personalty is more than one thousand dollars but less than ten thousand dollars;

---

1. Although Appellant frames his argument as an attack on the trial court's instructions, retroactive application of the amended section 16–13–30 would require reversal of his conviction.

2. There are four basic requirements to preserving issues at trial for appellate review. The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity. JEAN H. TOAL, SHAHIN VAFAI & ROBERT A. MUCKENFUSS, APPELLATE PRACTICE IN SOUTH CAROLINA, 57 (2nd ed. 2002).

 (2) ten years if the value of the personalty is five thousand
dollars or more.

S.C.Code Ann. § 16–13–30(B)(1)–(2) (2003) (emphasis added).
On June 2, 2010, the General Assembly amended section 16–
13–30 through enactment of the Omnibus Crime Reduction
and Sentencing Reform Act of 2010 (the Act). *See* Act No.
273, § 16.E, 2010 S.C. Acts & Joint Resolutions (2010). This
amendment redefined grand larceny as, "larceny of goods,
chattels, instruments, or other personalty valued in excess of
*two thousand dollars.*" S.C.Code Ann. § 16–13–30 (Supp.
2011) (emphasis added). The General Assembly included a
savings clause within the Act. The savings clause provides:

> The repeal or amendment by the provisions of this act or
> any law, whether temporary or permanent or civil or crimi-
> nal, *does not affect pending actions,* rights, duties, or
> liabilities founded thereon, or alter, discharge, release, or
> extinguish any penalty, forfeiture, or *liability incurred
> under the repealed or amended law,* unless the repealed or
> amended provision shall so expressly provide. After the
> effective date of this act, all laws repealed or amended by
> this act must be taken and treated as remaining in full force
> and effect for the purpose of sustaining any pending or
> vested right, civil action, special proceeding, criminal prose-
> cution, or appeal existing as of the effective date of this act,
> and for the enforcement of rights, duties, penalties, forfei-
> tures, and liabilities as they stood under the repealed or
> amended laws.

Act No. 273, § 65 (emphasis added).

 At Appellant's trial in 2011, the trial court instructed the
jury on the version of section 16–13–30 in effect at the time
Appellant committed the offense. Thus, the trial court in-
structed:

> The state must prove that the value of the [vehicle] taken
> *was $1,000 or more.* An owner of personal property may
> provide an estimate of the reasonable value of personal
> property. If the state has failed to prove the defendant
> guilty of grand larceny, you may consider whether the
> defendant is guilty of the offense of petit larceny. Proof of

petit larceny includes proof of the same elements as grand larceny except that the value is $1,000 or less.

(emphasis added).

The cardinal rule of statutory construction is to ascertain and effectuate legislative intent whenever possible. *State v. Baucom,* 340 S.C. 339, 342, 531 S.E.2d 922, 923 (2000). The Court should give words "their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *State v. Sweat,* 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010). A statute is not to be applied retroactively unless that result is so clearly compelled as to leave no room for doubt. *S.C. Nat'l Bank v. S.C. Tax Comm'n,* 297 S.C. 279, 281, 376 S.E.2d 512, 513 (1989). The statute must contain express words evincing intent that it be retroactive or words necessarily implying such intent. *Pulliam v. Doe,* 246 S.C. 106, 110, 142 S.E.2d 861, 863 (1965). The only exception to this rule is a statutory enactment that effects a change in remedy or procedure. *Jenkins v. Meares,* 302 S.C. 142, 146, 394 S.E.2d 317, 319 (1990) ("Our decisions recognize a presumption that statutory enactments are to be given prospective rather than retroactive effect. An exception to this presumption arises when the enactment is remedial or procedural in nature."). A savings clause is a restriction in a repealing act, intended to save rights, pending proceedings, penalties, etc., from the annihilation which would result from an unrestricted appeal. *Pierce v. State,* 338 S.C. 139, 146 n. 3, 526 S.E.2d 222, 225 n. 3 (2000) (quoting Black's Law Dictionary 1343 (1990)). Generally, the repeal of a statute without the inclusion of a savings clause operates retroactively to expunge pending claims, but the inclusion of a proper savings clause will have the effect of preserving a pending suit. *Chem–Nuclear Sys., LLC v. S.C. Bd. of Health and Envtl. Control,* 374 S.C. 201, 205, 648 S.E.2d 601, 603 (2007).

Appellant argues that the statutory change actually contained no savings clause, and that retroactive application is clearly compelled because the statute concerns a monetary amount. Appellant's argument regarding the absence of a savings clause is merely an attempt to confuse the issues. While the General Assembly did not include a savings clause in the amended version of section 16–13–30, the amendment took place by operation of the Act, which contains a savings clause. The General Assembly's inclusion of a savings clause demonstrates clear legislative intent to avoid disrupting pend-

ing or ongoing criminal prosecutions. To read the savings clause in any other way would result in a prohibited alteration of the statute's operation.[3] Moreover, section 16–13–30's savings clause provides that the amendment to section 16–13–30 does not affect liability incurred under the prior version of the statute. Appellant clearly incurred liability for grand larceny at the time he committed the crime. Thus, the trial court did not err in charging the jury under the version of section 16–13–30 in effect at the time Appellant committed grand larceny.

---

3. The savings clause in this case does contain an ambiguous term. The savings clause refers to "pending" actions, and it is unclear when an action is pending. For example, this term could refer to either the actual commission of the crime, the arrest, or the indictment. This Court's opinion in *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994) is instructive on this point.

In analyzing the trial court's dismissal of indictments in *Thrift*, this Court examined the General Assembly's amendment of the state's ethics law. The Attorney General obtained indictments, pursuant to section 8–13–490 of the South Carolina Code, covering acts of bribery the defendants committed in 1991. *Thrift*, 312 S.C. at 289, 440 S.E.2d at 345. However, the Attorney General did not obtain these indictments until 1992, and by that time the General Assembly had amended section 8–13–490. *Id.* at 290, 440 S.E.2d at 346. The trial court reasoned that the "new" law constituted an effective repeal of the prior law, and the trial court dismissed those indictments. *Id.*

However, the "new" law merely reenacted, in a different article, a more comprehensive series of statutes which addressed in greater depth the conduct formally violative of section 8–13–490. *Id.* at 304, 440 S.E.2d at 353. The Court looked to the plain meaning of the "new" law which clearly stated the legislative intent to amend the "old" law rather than to repeal it. *Id.* Additionally, in rejecting the implied repeal argument, this Court did not recognize a distinction between commission and indictment:

Given the overall climate in which the legislation was amended and the more stringent guidelines set forth in the new Act, it is apparent that the legislature did not intend to permit someone to escape prosecution for acts of bribery or similar activity *committed* prior to the amendment of the legislation.

*Id.* at 306, 440 S.E.2d at 354 (emphasis added); *see also Pierce*, 338 S.C. at 148, 526 S.E.2d at 226 ("[I]f there is no applicable saving provision, does the amendment impliedly repeal the old statute so as to prevent further prosecutions thereunder, under the common law rule ... that repeals operate to bar further prosecutions in the absence of saving provisions? Some cases have so held, but it seems clear that the legislature can hardly have intended by its amendment that the conduct in question should no longer be prosecuted (the rationale of the common law rule of repeal")).

## II. Directed Verdict

Appellant argues that the State failed to prove that the stolen vehicles met the statutory monetary threshold for grand larceny. We disagree.

At the time of Appellant's crime, larceny of goods, chattels, instruments, or other personalty valued in excess of $1,000 constituted grand larceny. S.C.Code Ann. § 16–13–30 (2003). In prosecutions for grand larceny, proof of the value of the property stolen is an essential element of the State's case. 52B C.J.S. *Larceny* § 174 (2008). Under South Carolina law, a property owner is generally qualified by the fact of ownership to give her estimate concerning the value of her property unless the owner's lack of qualification is so complete as to render that testimony entirely worthless. *Seaboard Coast Line R.R. v. Harrelson*, 262 S.C. 43, 46, 202 S.E.2d 4, 5 (1974). The rationale for allowing this testimony is that the owner should not be deprived of property without an opportunity to express her own view of the property's value to the jury. *S.C. State Highway Dep't v. Grant*, 265 S.C. 28, 32, 216 S.E.2d 758, 759 (1975).

Two cases, *State v. Smith*, 274 S.C. 622, 266 S.E.2d 422 (1980), and *State v. Waller*, 280 S.C. 300, 312 S.E.2d 552 (1984), are instructive on the specific use of a property owner's testimony to support a grand larceny conviction.

In *Smith*, the State charged the defendant with housebreaking and grand larceny, alleging the defendant stole a watch. 274 S.C. at 623–24, 266 S.E.2d at 422–23. The defendant moved for a directed verdict on the grand larceny charge, and the trial court denied the motion. *Id.* at 623, 266 S.E.2d at 422. The defendant argued that the State failed to prove that the watch was worth at least fifty dollars. *Id.* at 624, 266 S.E.2d at 423. This Court agreed:

> There is evidence that the watch in question was a Helbros gold watch with a broken band given to the victim by his grandfather and that it was worn on occasions for dress. The watch in question was introduced into evidence. *There was no testimony, circumstantial or direct, that this watch had a value of at least fifty dollars.* Even reviewing the evidence in the light most favorable to the State the value of the watch was left entirely to conjecture and speculation by

the jury and the lower court should have granted the motion for a directed verdict as to the charge of grand larceny. *Id.* (emphasis added).

In *Waller,* the defendant appealed his grand larceny conviction. 280 S.C. at 300, 312 S.E.2d at 552. The primary issue in that case was whether the larceny of property from different owners at the same time and at the same place constituted one or several larcenies. *Id.* at 301, 312 S.E.2d at 552–53. However, the Court briefly addressed the method by which the State proved the value of the stolen items:

> [The defendant] forcibly entered an apartment occupied by three roommates and took property belonging to each. The property was never recovered. At trial, each roommate estimated the value of the items taken. [The defendant] concedes the aggregate value of the property exceeded Two Hundred ($200.00) Dollars, the statutory minimum to sustain a conviction of grand larceny. However, [the defendant] argues the value of the property taken from more than one owner cannot be aggregated so as to sustain a conviction of grand larceny should the value of property taken from each owner be less than Two Hundred ($200.00) Dollars, and he argues the testimony presented at trial is insufficient to show the value of the property taken from any one of the three roommates equals Two Hundred ($200.00) Dollars.

*Id.* at 301, 312 S.E.2d at 552–53. The Court found the roommates' testimony regarding the property's value sufficient:

> However, we are satisfied the evidence presented at trial was sufficient to permit a jury to conclude that the value of the property taken from one of the roommates did exceed Two Hundred ($200.00) Dollars.

*Id.* at 301 n. 1, 312 S.E.2d at 553 n. 1; *see also State v. Humphery,* 276 S.C. 42, 44, 274 S.E.2d 918, 918–19 (1981) (holding that the property owner's testimony alone placed the value of the stolen property above the amount necessary to constitute grand larceny); *S.C. State Highway Dep't v. Grant,* 265 S.C. 28, 32, 216 S.E.2d 758, 759–60 (1975) (holding that "the jury is the tribunal to determine the weight to be accorded the testimony of the witnesses and accept or reject

the valuations placed thereupon."); *Seaboard Coast Line,* 262 S.C. at 46, 202 S.E.2d at 5 (stating "the owner of an article whether he is familiar with such values or not, ought certainly be allowed to estimate its worth; the weight of this testimony (which often would be trifling) may be left for the jury; and courts have usually made no objections to this policy") (citing 3 Wigmore, *Evidence* § 716 (Chadbourn Rev.1970)); *State v. Masters,* 179 W.Va. 752, 373 S.E.2d 173, 176 (1988) ("The testimony of the owner concerning the value of the property when purchased and of recent sales prices was sufficient to permit the jury to find the defendant guilty of taking property having a value of $200 or more."); *N.C. State Highway Comm'n v. Helderman,* 285 N.C. 645, 207 S.E.2d 720, 725 (1974) ("Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner.... The weight of his testimony is for the jury, and it is generally understood that the opinion of the owner is so far affected by bias that it amounts to little more than a definite statement of the maximum figure of his contention.") (internal citations omitted).

 The foregoing authority is clear that a property owner is competent to testify regarding the value of damaged or stolen property. To the extent there is confusion, we take this opportunity to clarify that a property owner's testimony alone is sufficient to support a conviction for grand larceny.

 In the instant case, Robert testified concerning the vehicle's worth:

Well just to give a decent price, I'd say about $1200. Because I paid, when I bought the car, I bought as it as it was at $700. And I put over $500 into it. I mean, as parts not labor.... Just parts. And you know, I would have more in the car than $1200 if I would just put on my labor. Because I've done—I done the mechanical work myself.

Appellant's trial counsel cross-examined Robert extensively regarding the stolen vehicle's worth. Trial counsel pointed out that Robert could not produce the vehicle's original title or proof of insurance demonstrating that he recently used the

vehicle. Robert admitted under cross-examination that he could not produce the original bill of sale for the car:

Q: Did somebody tell you that you were going to have to prove the value of the car?

A: Yes.

Q: Didn't you think maybe the bill of sale as to how much you paid for it might be helpful? That didn't occur to you?

A: No.

Q: No, just didn't occur to you, how much I paid for it as to what the value was.

A: No, because after I bought the car, the car is mine. And I know what—I don't know exactly what the book price. She told me what it was. But I know I couldn't get what the book price, because it's not up to top priority as being in that standard. But from what I got in the car and what I want for the car, I mean, I could simply say that. But I am not going on the value of what the car is worth.

. . . .

Q: You didn't even bring a blue book value of the car in here today, did you?

A: I wasn't told to bring a blue book.

. . . .

Q: Oh, well, you're on the stand here though, aren't you? And this is supposedly your car, right?

A: That's right.

Q: We have nobody telling us what the car is worth, do we? No independent and nobody to tell us what you paid for it. Nobody to tell us the blue book value. No pictures so we can look and see what condition it was in. Do you have any pictures? Let me—if you left here at lunch and went home, I bet you couldn't show one picture of that car, could you? If we gave you an hour, you couldn't go home and find one picture of that car, could you?

A: No, I don't have a picture of the car.

Q: Could you go home and find a copy of that bill of sale that you claim you paid $700 for?

A: Yes, sir. If I have to, I would. Because—

Q: Do you have it at home? Do you know where it is at home?

A: I don't have it in my presence.

Q: Do you have it at home? Do you know where it is at home?

A: I have to look for it.

Q: You have to look for it.

Lawrence, owner of the 1987 Ford Taurus, testified to the vehicle's good condition. The vehicle actually belonged to Lawrence's deceased father, and Lawrence came into possession as an heir. Lawrence testified that he did not plan to sell the vehicle due to its sentimental value, but that the vehicle's fair market value was $1,100. Lawrence admitted under cross-examination that he could not produce any documentation or other evidence in support of his estimation of the vehicle. He could also not show that the car had been driven recently or at the time of his father's death. However, Lawrence testified that he arrived at the value based on independent research:

Q: [Lawrence], just a couple of follow-up questions. [Appellant's trial counsel] asked you whether or not you knew the blue book value of the vehicle.

A: Yes.

. . . .

Q: And did you in fact look to try to determine what the blue book value if any your vehicle was?

A: I did.

Q: And what is the minimum retail value of that vehicle?

A: $1,080.

Q: And if it was in pristine prime condition what would be the retail value today?

A: $2,678.

Following the close of the State's case, Appellant's trial counsel moved for a directed verdict:

I make a motion for directed verdict. The main reason is, they haven't come in here and proven anything. All they have done in here is come in here and talk. They haven't come in here and put any documents up which were available, to prove any of their assertions or whatever. So for that reason, I would ask that a verdict be directed at this time. If what they were saying is true, they could have easily proven it. They didn't because they are not telling the truth about whether these cars have been driven in the last ten or fifteen years.

The trial court denied trial counsel's motion, finding:

I believe it goes to the weight of the evidence. And, [trial counsel], I am sure you are going to argue that to the jury. Are—also the law states that an owner of personal property provide [sic] an estimate of reasonable value of that personal property. And for that reason, I am denying your motions.

Based on the testimony presented at trial, the trial court did not err in refusing to grant Appellant's directed verdict motion. In reviewing a motion for directed verdict, the trial court is instructed to view the evidence in the light most favorable to the State, and if there is any direct or substantial circumstantial evidence tending to prove the guilt of the accused, the case should be submitted to the jury. *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). In this case, the property owners' testimony constituted "any" direct evidence and gave rise to more than mere suspicion regarding Appellant's guilt. Moreover, neither the established rule nor the trial court prevented Appellant's trial counsel from going to great lengths to demonstrate any possible weakness or bias in the property owners' testimony.

## CONCLUSION

Based on the foregoing, Appellant's convictions are

**AFFIRMED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.