State *ex rel.* Charles Moran

*v.*

Robert B. Ziegler, *Judge, etc., et al*

(No. 14130)

Decided June 6, 1978.

*S. J. Angotti, David L. Solomon* for relator.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *David F. Greene,* Assistant Attorney General, for respondents.

NEELY, JUSTICE:

In this action the relator, Charles Moran, seeks a writ of prohibition against Robert B. Ziegler, Judge of the Circuit Court of Harrison County, Edmund Matko, Prosecuting Attorney of Harrison County, and Jerald E. Jones, Private Prosecuting Attorney. The petition raises questions concerning the propriety of the private prosecutor's participation in the prosecution of the relator on charges of malicious wounding, felonious assault, and accessory before the fact to murder, and the relator seeks to stay the prosecution until the private prosecutor is disqualified. We award the writ.

The issues raised in this proceeding were originally raised in the Circuit Court of Harrison County where the relator filed a motion to disqualify the private prosecuting attorney, Jerald Jones. The trial judge held a hearing on the motion and decided to deny it. The papers filed with that motion and a transcript of the hearing were appended to the respondents' answer and return in this Court, and these materials develop the factual background of the case. According to the relator's testimony at the hearing, he was involved in a shooting incident that took place on the evening of November 3, 1976 in Clarksburg, West Virginia and resulted in the death of one person and the wounding of another. Sometime shortly after the incident, at about 10:30 p.m.

or 11:00 p.m. the same evening, the relator called Jerald Jones at his home. The two parties to that telephone call have given substantially different accounts of it.

The relator claims that he asked attorney Jones to represent him in connection with the shooting incident and to meet him at the county jail where he intended to surrender himself to the proper authorities. In the course of seeking Mr. Jones' assistance and arranging the jailhouse meeting, the relator claims to have discussed in great detail all of the facts and circumstances of the shooting itself, as well as the events that led up to it and followed it. Mr. Jones' version of the call is that the relator merely reported he was being sought by the police and asked Mr. Jones to meet him at the county jail because he was apprehensive about possible physical injury on being taken into custody. Mr. Jones emphatically denied that the relator discussed any of the facts or circumstances surrounding the shooting with him.

After receiving the phone call, Mr. Jones did in fact go to the jail, but the relator failed to appear. The relator claims to have called Mr. Jones at the jail to tell him he changed his mind about meeting him there. The relator admits that he did not discuss any details of the shooting incident during this second telephone conversation of the evening. Mr. Jones denied that this conversation ever occurred. His version is that someone else in the jail received the call and gave Mr. Jones a message from the relator canceling the jailhouse meeting. The discrepancy in the testimony concerning this second phone call is not critically important, inasmuch as no one contends that the relator transmitted any information concerning the shooting incident to Mr. Jones while Mr. Jones was waiting at the jail.

Based on his version of the facts, the relator advances two legal theories which he believes entitle him to relief in this action. First, he argues that under the *Code of Professional Responsibility* it is a breach of the fiduciary relationship between lawyer and client for the lawyer to appear in a criminal proceeding against the client which

will or may require the lawyer to use confidential information obtained by the lawyer in the course of his professional relations with the client. Secondly, the relator argues that the due process right to a fair trial is violated when a private prosecutor aids in prosecuting an accused person who has given the private prosecutor confidential information concerning his involvement in the crime while the accused was under the impression the private prosecutor was representing him in the matter. Both of these legal arguments are predicated on the underlying factual assumption that the relator did indeed tell Mr. Jones about his involvement in the shooting incident under circumstances which obligated Mr. Jones to maintain the confidentiality of the relator's communications to him. Accordingly, we must first attempt to resolve the factual dispute in this case, before moving to consider the relator's legal arguments.

Given the direct conflict between the relator's and the private prosecutor's affidavits and testimony, we cannot say with assurance what did happen or whether they ever established an attorney-client relationship in this matter. Our difficulty is to an extent compounded by having to use a cold record and by having no opportunity to observe witness demeanor. In these circumstances we can only comb the record for inconclusive fragments of evidence which shed some dim light on the facts. First, it is admitted that Mr. Jones had represented the relator in several other unrelated matters before the incident which is the subject of this proceeding. In fact, it was Mr. Jones' former representation of the relator which apparently prompted the relator to seek his assistance again after the shooting incident. Secondly, it is admitted that Mr. Jones spoke to the relator on the telephone and, afterward left his own home late at night to go to the county jail for a meeting with the relator. Finally, regardless of whatever else may or may not have been said during their phone conversation, Mr. Jones did admit that the relator told him there had been a shooting. This statement, standing alone, cannot be said to create an attorney-client relationship, but it is

somewhat more specific than a mere statement that the relator was "in trouble" or "needed help." The added degree of specificity certainly could help explain the relator's feeling that he had retained Mr. Jones, even though he may not have observed all the necessary formalities. Taking all of these factors into account, along with the disputed portions of the relator's affidavit and testimony, we conclude that at least there was the appearance of an attorney-client relationship between Mr. Jones and the relator in this matter.

Our finding that there was the appearance of an attorney-client relationship between Mr. Jones and the relator is in no way intended to disparage Mr. Jones' testimony that he did not enter into a professional relationship with the relator in this matter or obtain privileged information from the relator. Obviously a relationship can appear to exist which, in fact, does not. We must bear in mind, however, that in this case we are not merely concerned with resolving a civil dispute between an attorney and a client. Here we are concerned with a criminal defendant's involvement with the prosecution, an arm of the State which must always guard against the appearance of impropriety. As we recently held, in the case of *State v. Boyd,* ____ W. Va. ____, 233 S.E.2d 710 at 717 (1977):

> [A] prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

While the language quoted above, requiring prosecuting attorneys to observe the highest standards of conduct, specifically applies to public prosecutors, we see no reason why private prosecutors should not be held to the

same high standards, in spite of the fact that the private prosecutor is only assisting the public prosecutor who ultimately bears the responsibility for decisions in the case.

With all of the foregoing as preface, we must now determine whether our finding of the appearance of an attorney-client relationship in this case requires the disqualification of the private prosecutor, *Mr. Jones. State v. Britton,* ___ W. Va. ___, 203 S.E.2d 462 at 466 (1974), states the general rule:

> The general rule, of which we are aware, is that an attorney should not undertake to represent adverse or conflicting interests. A prosecuting attorney should not, therefore, attempt to counsel with an accused when he is also committed to the responsibility of prosecuting the accused. . . . [T]hough the services rendered or consultations given . . . [are] gratuitous and done in good faith, a prosecuting attorney should not be permitted to participate in a criminal case if, by reason of his professional relations with the accused, he has acquired any knowledge of facts upon which the prosecution is predicated or closely related.

While this rule applies when, as a matter of fact, the accused gave the prosecuting attorney relevant information in the context of their attorney-client relations, we now extend the rule to cover situations where there is the apearance of an attorney-client relationship between the accused and the prosecutor, either public or private. The general rule stated in *State v. Britton* was based on the due process guarantees of Art. III, sec. 14 of the *West Virginia Constitution,* but our extension or corollary of that rule does not rise to such a constitutional level. Rather, our rule is based on the exercise of our inherent powers to administer the judicial system, in which, as stated above, the prosecution occupies an important quasi-judicial position.

In passing we would note that Mr. Jones responded immediately to relator's request for help, left his home

late at night to go to the jail, and in every way conducted himself in the highest tradition of the bar. There is no evidence that he was ever retained, or even that the relator cooperated with Mr. Jones' attempts to help him. Our opinion in no way finds impropriety on the part of Mr. Jones, but rather an *appearance* of impropriety in the nature of a conflict of interest which has a potential capacity to taint the record in the event of conviction and provide, in the absence of this relief, grounds for reversal on appeal or habeas corpus relief at some distant time when the record would be cold and necessary witnesses unavailable.

*Writ awarded.*