444 S.E.2d 566

**WEST VIRGINIA CANINE COLLEGE, INC., and Wayne Davis, Plaintiffs Below, Appellants,**

v.

**David R. REXROAD, Lynne W. Rexroad, Individually and as Attorneys and Partners in the Law Firm of Rexroad and Rexroad; Roy D. Law, as an Attorney; and Jolynne Corp., a West Virginia Corporation, and Paul McCormick, Defendants Below, Appellees,**

and

**David R. REXROAD, Third–Party Plaintiff Below, Appellee,**

v.

**Wayne DAVIS, Third–Party Defendant Below, Appellant.**

No. 21970.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1994.

Decided May 20, 1994.

R. Clarke VanDervort, Mark A. Toor, Robinson & McElwee, Charleston, for appellants.

Elisabeth Rose, Phillip C. Petty, Rose, Padden & Petty, L.C., Fairmont, for appellee Roy D. Law.

MILLER, Justice:

The appellants, West Virginia Canine College, Inc., and Wayne Davis, its president (hereinafter collectively called Canine College), appeal an order of the Circuit Court of Upshur County which dismissed under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure their amended complaint against attorney Roy D. Law. The circuit court found that the amended complaint failed to state a cause of action.

The underlying civil action was filed to recover damages which the Canine College claimed it suffered as a result, in part, of professional malpractice on the part of Mr. Law. The malpractice claim was based on the fact that in June of 1988, Mr. Law examined the title to a 13.65 acre tract of land that the Canine College was purchasing from David R. Rexroad and Lynne W. Rexroad, his wife, which was located in Upshur County. This property was part of a larger tract of 122 acres which the Rexroads owned that had been conveyed to Mr. Rexroad in May of 1982 by the Board of Trustees of the West Virginia Annual Conference of the United Methodist Church.[1]

The Canine College asserted in its amended complaint that Mr. Law's title report implied that there was a valid 1958 oil and gas lease on the adjacent property. It also was asserted that Mr. Law breached his attorney-client relationship with the Canine College. It is claimed that this breach occurred in 1990 when Mr. Law filed suit challenging the validity of the 1958 oil and gas lease. In that suit, he represented the Jolynne Corporation which is owned by the Rexroads, both of whom are attorneys. In 1990, the Rexroads conveyed the minerals underlying a

---

1. Mr. Rexroad conveyed a one-half interest in the property to Mrs. Rexroad in September, 1982.

section of the remaining portion of the 122 acre tract to the Jolynne Corporation. The defendants were Donald Michels and Inco 3, Inc., who were the leaseholders of the oil and gas.

### I.

With regard to the first claim, Mr. Law points out that the title report specifically excepted and reserved to the parties of the first part (the Rexroads) "all of the coal, oil and gas in and underlying said property hereinabove conveyed together with any right to free gas for the use in a dwelling." [2] The appellants focus on that portion of the quoted language "together with any right to free gas for use in a dwelling" as being indicative of an oil and gas lease that carried with it the right on the part of the mineral owner to have free gas.

There is no dispute that there was no oil and gas lease on the 13.65 acre tract conveyed by the Rexroads to the Canine College. Moreover, the amended complaint recognized that the minerals underlying the 13.65 acre tract were reserved by the Rexroads.

■ Under this acknowledged set of facts, we agree with the circuit court that Mr. Law was guilty of no misconduct with regard to the June 26, 1988, title report. There was nothing in the report that in any manner misrepresented the quantity or quality of the estate that was to be conveyed to the appellants. In *Keister v. Talbott*, 182 W.Va. 745, 391 S.E.2d 895 (1990), we discussed a malpractice claim against an attorney. There, the attorney overlooked an earlier coal severance deed. As a consequence, the attorney prepared a deed conveying both the surface and mineral estates to the grantees, the Keisters. When they attempted to lease the coal, the earlier severance deed was discovered. Thereafter, they sued the attorney.

■ We set out in the Syllabus Points of *Keister* several general rules with regard to the duty of care owed to a client by an attorney,[3] its proximate cause to the client's injury,[4] and the necessity of actual damages.[5] We also set out this general principle with regard to a defective title report in Syllabus Point 4 of *Keister:*

"Where a client has been injured by an attorney's negligence in certifying or examining title to real estate, the exact nature of damages may depend on the nature of the client's interest in the property, the character of the attorney's error, and the other facts of the case."

■ There was no question in *Keister* that an error was made by the attorney in examining the title. Indeed, on appeal, this point was not contested and the issue centered on the amount of damages. However, here, unlike *Keister,* there exists a finding by the circuit court that no error was made in the title report, and, therefore, no malpractice occurred. We find this to be correct as a matter of law even under the rigors of a Rule 12(b)(6) standard, which we set out in the Syllabus of *Fass v. Nowsco Well Service, Ltd.,* 177 W.Va. 50, 350 S.E.2d 562 (1986):

" ' "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl., *Flowers v. City of Morgan-*

2. The title report by Mr. Law contained several quoted paragraphs dealing with the various exceptions, reservations, and subsidiary rights such as utility easements. The appellants state in the amended complaint that the title report quoted verbatim the language from the proposed deed from the Rexroads to the Canine College.

3. Syllabus Point 1 of *Keister* states: "An attorney who undertakes to perform professional services for a client is required to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances."

4. Syllabus Point 2 of *Keister* states: "In an attorney malpractice action, proof of the attorney's negligence alone is insufficient to warrant recovery; it must also appear that the client's damages are the direct and proximate result of such negligence."

5. Syllabus Point 3 of *Keister* states: "Damages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence."

*town,* 166 W.Va. 92, 272 S.E.2d 663 (1980).' Syl. pt. 2, *Sticklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148 (1981)."

The appellants do not assert that they were entitled to free gas from the property that it purchased. Rather, they assert that the reference to the mineral exclusion in its deed which included "any right to free gas for the use in a dwelling" implies that the lease on the adjoining tract is valid. Under no set of facts could this be deemed malpractice arising from the title report.

## II.

The claim of a breach of his attorney-client relationship by Mr. Law rests on events occurring after the transfer of the 13.65 acre tract by the Rexroads to the Canine College, which occurred on July 9, 1988. This second cause of action rests upon a somewhat different legal analysis than was discussed in *Keister, supra,* which dealt with the general law with regard to attorney malpractice for failure to exercise reasonable professional care. Here, the cause of action is predicated on the fact that Mr. Law is claimed to have represented conflicting interests. The general rule is stated in 7 Am. Jur.2d *Attorneys at Law* § 198 (1980):

"An attorney's representation of two or more clients with adverse or conflicting interests constitutes such misconduct as to subject him to liability for malpractice, unless the attorney has obtained the consent of the clients after full disclosure of all the

facts concerning the dual representation." [6] (Footnote omitted).

*See also* Annot., 28 A.L.R.3d 389 (1969). As a part of this malpractice cause of action, as we indicated in *Keister v. Talbott, supra,* it must be shown that the damages were a direct and proximate result of the malpractice.

The general rule that an attorney may be guilty of malpractice if he represents clients with conflicting interests also includes the situation where the attorney's current client has an interest which is materially adverse and substantially similar to that of his former client unless the former client consents. The ethical responsibility of an attorney to a former client is covered in Rule 1.9 of the Rules of Professional Conduct.[7]

In *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569 (1993), we discussed this rule in the context of a motion to disqualify a prosecuting attorney who previously represented the defendant in a divorce action. Mrs. McClanahan was being prosecuted for maliciously assaulting her husband. We made note of the fact that Rule 1.9(a) applies to criminal as well as civil matters. The key test for applying Rule 1.9(a) is whether the attorney is representing another person in the same or substantially related matter that is materially adverse to the interests of his former clients. We explained in Syllabus Point 2 of *McClanahan:*

"Rule 1.9(a) of the Rules of Professional Conduct, precludes an attorney who has formerly represented a client in a matter

---

**6.** This concept is contained in Rule 1.7 of the Rules of Professional Conduct:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
"(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
"(2) each client consents after consultation.
"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
"(1) the lawyer reasonably believes the representation will not be adversely affected; and
"(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation

shall include explanation of the implications of the common representation and the advantages and risks involved."

**7.** Rule 1.9 places two general restrictions on attorneys:

"A lawyer who has formerly represented a client in a matter shall not thereafter:
"(a) represent another person in the same or substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the former client consents after consultation; or
"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known."

from representing another person in the same or a substantially related matter that is materially adverse to the interests of the former client unless the former client consents after consultation."

In order to make a determination of whether the matter is the same or substantially related and is materially adverse to the former client, an analysis is made of the former as well as the current representation, as we explained in Syllabus Point 3 of *McClanahan:*

"Under Rule 1.9(a) of the Rules of Professional Conduct, determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations."

According to the appellants' amended complaint, shortly after the transfer of the 13.65 acre tract, Mr. Rexroad, as Seller, and Mr. Davis and the Canine College, as Buyers, entered into a written agreement regarding certain uses of the property. Among these was paragraph 7, which states:

"It is agreed and understood that in the event Buyers purchase the gas well on the EvUnBreth Acres premises, then Seller shall have free gas to both the dining hall and shop, and Seller agrees not to charge a royalty for gas used by the Buyers for so long as Seller is also using the gas in the two (2) buildings above referred to." [8]

The appellants, in their amended complaint, asserted that in early 1989 they engaged the Rexroad firm to attempt to purchase the leasehold interest from Michels and Inco 3. To this end, the Rexroads prepared a bill of sale and assignment and promissory note in which Michels and Inco 3 agreed to assign their interests in the oil and gas lease dated June 6, 1958. The Rexroads were paid for this legal work by the appellants. However, these documents were never executed.

According to the amended complaint, the Rexroads transferred the rights to minerals

underlying the leasehold estate by deed dated October 1, 1990, to their company the Jolynne Corporation. On October 31, 1990, the appellants were able to obtain a written agreement with Michels and Inco 3 whereby they obtained gas for $1,000. This agreement was "conditioned upon the parties hereto negotiating, in good faith, for the lease of the said well, or for the sale and purchase of the said well." The appellants assert that the Rexroads were aware of the negotiations even though they did not prepare the October, 1990, agreement.

The foregoing allegations in the amended complaint do not implicate Mr. Law. It is admitted that he is not a member of the Rexroad law firm. The only assertion that implicates Mr. Law with regard to this second cause of action is that he represented the Jolynne Corporation when it filed suit on November 20, 1990, against Michels and Inco 3 to determine whether there was a valid oil and gas lease.

The malpractice issue raised below was whether Mr. Law's title work on behalf of the appellants in 1988 should have foreclosed him from representing the Jolynne Corporation in the suit filed in November of 1990 challenging the validity of the oil and gas lease. There is no claim that Mr. Law did any legal work for the appellants with regard to the attempted acquisition of the oil and gas lease. It is clear that the oil and gas lease was not a part of the 13.65 acre tract which the appellants acquired. Nor was there any contingency in that purchase which involved the oil and gas well.

In *McClanahan,* we found that the prosecutor's prior representation of Mrs. McClanahan in her divorce action was grounded on her claim that she had been subjected to cruel and inhuman treatment by her husband. We found these charges when contrasted with her malicious assault defense to be substantially related:

"These same facts and circumstances are substantially related to her defenses of self-defense and 'battered wife syndrome'

---

**8.** This agreement dated July, 1988, was signed by Mr. Rexroad and Mr. Davis, individually and as

president of the Canine College.

in the criminal action. The adverse interest in the prosecutor's continued representation is apparent in this situation. Diligent prosecution would seek to discredit the relator's claims of self-defense and 'battered-wife syndrome.' This goal would be diametrically contrary to the position the prosecutor advanced on behalf of the relator in the earlier divorce suit." 189 W.Va. at 296, 430 S.E.2d at 575.

In this case, there is no such substantial relationship with regard to Mr. Law's representation of the appellants on the acquisition of the 13.65 acre tract and his subsequent representation of the Jolynne Corporation in its suit against Mr. Michels and Inco 3 to determine the validity of the oil and gas lease. As we discussed in Part I, *supra*, the oil and gas lease was not located on the property that the appellants purchased. They did not receive any interest in the mineral estate in their deed. We concluded in Part I that there was nothing in their title report nor their deed that would extend any right to the appellants in the oil and gas lease.

The assertions in the amended complaint with regard to the appellants' attempt to secure an interest in the gas after they obtained the 13.65 acre tract demonstrate that Mr. Law was not involved in this work. Moreover, when he filed suit, it was not against the appellants, but against the holders of the mineral lease, Mr. Michels and Inco 3. We agree with the circuit court that the appellants' second theory of liability against Mr. Law based on a claim of conflicting representations is deficient as a matter of law.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Upshur County.

Affirmed.