557 S.E.2d 361

STATE of West Virginia ex rel. Charles Garland KEENAN, Petitioner

v.

Honorable John W. HATCHER, Jr., Judge of the Circuit Court of Fayette County, and the State of West Virginia, Respondents.

No. 29837.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 5, 2001.

Decided Nov. 30, 2001.

Concurring and Dissenting Opinion of Justice Davis Dec. 10, 2001.

308

John R. Mitchell, Sr., Michael T. Blevins, Dixon Ericson, Charleston, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Respondent State of West Virginia.

McGRAW, Chief Justice:

In this original jurisdiction proceeding, the petitioner, Charles Garland Keenan, seeks a writ of prohibition and/or mandamus requiring the dismissal of a criminal recidivist information presently pending against him pursuant to W. Va.Code §§ 61–11–18 & –19 in the Circuit Court of Fayette County, arguing that such instrument is invalid based on the fact that the county prosecutor, under whose authority it was filed, had previously acted as defense counsel in connection with at least one of the predicate offenses cited in the information. We agree with Keenan that the prosecutor and his staff are disqualified from prosecuting the recidivist charge, and find that dismissal of the information, rather than appointment of a special prosecutor as was done in this case, is the proper means of curing the potential prejudice resulting from such disqualification. Consequently, we grant a writ of prohibition to prevent further proceedings on the pending recidivist information.

## I.

### BACKGROUND

There is no dispute concerning the salient facts bearing upon the present proceeding. Keenan was indicted for murder by a Fayette County grand jury during the September 2000 Term. The indictment was prepared and signed by Prosecuting Attorney Paul M. Blake, Jr., although during subsequent proceedings the State was represented by two of Prosecutor Blake's assistants, Hamilton D. Skeens and Thomas J. Steele, Jr. In early December 2000, approximately one week before trial, the State forwarded information to the defense, consisting of criminal history and certified court records, evidencing the fact that Keenan had three prior felony convictions.[1] Shortly thereafter, on December 12, 2000, the defense moved to disqualify the Fayette County Prosecutor's office from undertaking prosecution of the murder charge, arguing that a conflict existed as a result of the fact that both Prosecutor Blake, and one of his assistants, Carl Harris, had previously represented Keenan in connection with the two prior 1986 felony convictions. This disqualification motion was subsequently denied by the circuit court prior to trial.[2] In the

---

1. The three previous convictions cited by the State were: (1) a 1959 conviction in the Intermediate Court of Kanawha County for breaking and entering; (2) a November 7, 1986 felony conviction for obtaining property by false pretenses rendered in the Circuit Court of Fayette County; and (3) a December 4, 1986 conviction for transferring and receiving stolen property arising from Kanawha County.

2. Whether the lower court was correct in refusing to disqualify the Fayette County Prosecutor and his staff from representing the State on the

interim, the prosecution extended a plea offer permitting Keenan to plead guilty to second-degree murder, in exchange for the State agreeing not to pursue recidivist sentencing. The plea offer was rejected, and a jury trial commenced on December 15, 2000. Keenan was subsequently convicted of the lesser-offense of voluntary manslaughter on December 21, 2000.

On December 27, 2000, the State filed an information pursuant to W. Va.Code § 61–11–19 (1943), indicating Keenan's three prior felony convictions. In accord with the statute's time frame, which requires that a defendant who is subject to a recidivist information be made to appear and answer on the issue of identity prior to the expiration of the current term of court, a hearing was conducted on January 3, 2001, at which time Keenan chose to remain silent. A jury trial on the issue of whether Keenan was the same individual that had previously been convicted was accordingly set for March 19, 2001.

Defense counsel again raised the matter of disqualification in a January 4, 2001 motion to dismiss the recidivist information. This motion was denied by an order entered on January 25, 2001, which set forth the following explanation for the ruling:

The present recidivist proceeding primarily involves the issues of whether the prior convictions exist and the identity of the defendant, as contained in those prior convictions. The Court finds that the prior representations of Mr. Blake and Mr. Harris are not substantially related nor have any related nexus with the recidivist proceedings. Further, the convictions alleged in the information are easily accessible to anyone who can search the Clerk's office and the State has not gained any unfair advantage because of the prior representations.

The defense renewed its dismissal motion on March 16, 2001, citing an "informal opinion" rendered by Chief Lawyer Disciplinary Counsel Lawrence J. Lewis, to the effect that the previous representations amounted to a conflict sufficient to disqualify the Fayette County Prosecutor's office from representing the State in the recidivist proceeding. Attached to the motion was a copy of a request for a formal ethics opinion that was simultaneously being delivered to the Lawyer Disciplinary Board. The circuit court subsequently denied the motion to dismiss, but nevertheless granted an unopposed motion for a continuance pending the issuance of a formal opinion by the Board.

The Lawyer Disciplinary Board rendered an opinion, which was related to the parties by a April 6, 2001 letter from Chief Lawyer Disciplinary Counsel Lewis, that succinctly stated as follows:

On March 29, 2001, the Lawyer Disciplinary Board considered your request concerning whether a prosecutor has a conflict of interest in representing the State in a recidivist action, when he was the defense attorney on one of the convictions relied upon to enhance the sentence. The Board considered Rule 1.9 of the Rules of Professional Conduct, as well as [State ex rel.] McClanahan v. Hamilton, 189 W.Va. 290, 430 S.E.2d 569 (1993).

It is the opinion of the Board that under these circumstances and in light of Rule 1.9, as well as McClanahan, a conflict of interest does exist on the part of the prosecutor and, if the State desires to pursue the action, a special prosecutor should be appointed. . . .

Upon receipt of the Board's opinion, and in reliance thereon, the Fayette County Prosecutor's office moved to disqualify itself from further participation in the case, and requested the appointment of a special prosecutor. The circuit court granted the motion, stating that "though disagreeing with the opinion of the Lawyer Disciplinary Board, [the court] is of the opinion that, to avoid any further delay, the State's Motion for Recusal and for the appointment of a Special Prosecutor should be granted." Keenan petitioned this Court for prohibition and/or mandamus relief on May 10, 2001, seeking to prevent any

---

underlying murder charge presents a distinctly different issue on which this Court expresses no opinion. *E.g., State v. Barnett,* 125 N.M. 739, 965 P.2d 323 (1998) (vacating guilty plea on the

basis of conflict arising from prosecutor's representation of defendant with respect to similar prior offense).

further action on the previously-filed recidivist information, and we issued a show cause order on June 21, 2001.

## II.

### STANDARD FOR ISSUANCE OF WRIT

■ Prohibition relief may be invoked pursuant to W. Va.Code § 53–1–1 (1923), " 'only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' Syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syl. pt. 2, *Cowie v. Roberts*, 173 W.Va. 64, 312 S.E.2d 35 (1984).

This Court has adopted a five-factor test to determine whether prohibition relief is appropriate under a given set of circumstances:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Under this and similar standards applied in the past, the Court has consistently found that a party aggrieved by a trial court's decision on a motion to disqualify may properly challenge such ruling by way of a petition for a writ of prohibition. *See State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993) (recognizing that a challenge to a circuit court's ruling on a motion to disqualify is appropriately brought through a petition for prohibition); *see also State ex rel. DeFrances v. Bedell*, 191 W.Va. 513, 516, 446 S.E.2d 906, 909 (1994) (per curiam); *Farber v. Douglas*, 178 W.Va. 491, 493, 361 S.E.2d 456, 458 (1985); *State ex rel. Taylor Assoc. v. Nuzum*, 175 W.Va. 19, 23, 330 S.E.2d 677, 682 (1985); *State ex rel. Moran v. Ziegler*, 161 W.Va. 609, 244 S.E.2d 550 (1978).

As we explained in *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 482 S.E.2d 204 (1996) (per curiam), there are sound reasons for permitting the examination of disqualification matters through original proceedings before this Court:

The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the party's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay....

Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.

198 W.Va. at 589–90, 482 S.E.2d at 206–7 (citation omitted).

■ Consequently, since petitioner's motion to dismiss the pending recidivist information was predicated upon an assertion that the prosecutor's office was disqualified, prohibition is a proper means to challenge the circuit court's ruling on this issue.[3]

## III.

## DISCUSSION

■ In determining whether petitioner Keenan is entitled to extraordinary relief precluding further prosecution under the existing recidivist information, the Court must address two distinct issues: First, as a threshold matter, we must ascertain whether the Fayette County Prosecutor's office was disqualified from participating in the recidivist phase of Keenan's prosecution, based upon the fact that the elected prosecutor and one of his assistants had previously acted as defense counsel with respect to two of the predicate offenses giving rise to such proceeding.[4] And second, assuming that disqualification was indeed required under the circumstances of this case, the Court must go on to resolve the issue of whether imputed disqualification on the part of the authority which presented the recidivist information had the effect of rendering such instrument invalid.

3. Because we find that the circuit court's ruling on the disqualification motion is properly reviewable by way of a proceeding in prohibition, we do not consider petitioner's request for a writ of mandamus.

4. The record in this case is not entirely clear as to whether Prosecutor Blake and Assistant Prosecutor Harris jointly defended Keenan with respect to both of the 1986 convictions, or whether their representations were separate. In contrast to situations in which an elected prosecutor is disqualified, where "disqualification of a prosecuting attorney operates to disqualify his assistants," syl. pt. 1, in part, *Moore v. Starcher*, 167 W.Va. 848, 280 S.E.2d 693 (1981), the fact that an assistant prosecuting attorney is disqualified does not necessarily require disqualification of the entire office in which he or she works. *See* syl. pt. 3, *State ex rel. Knotts v. Watt*, 186 W.Va. 518, 413 S.E.2d 173 (1991) (holding that indictment need not be dismissed where disqualified assistant did not participate in investigation of case or presentment to grand jury). Thus, it may be that Assistant Prosecutor Harris' past representation of Keenan is without significance in the

### A. *Disqualification*

Keenan argues that disqualification was required in this case by Rule 1.9(a) of the West Virginia Rules of Professional Conduct, in that his "former criminal defense attorney is now prosecuting him because of the existence of the conviction that resulted from the prior representation." Specifically, petitioner contends that the previous representations by Prosecutor Blake and Assistant Prosecutor Harris are "substantially related" to the present recidivist proceeding and thus subject to the restriction set forth in Rule 1.9(a). Conversely, the State asserts that a substantial relationship is lacking for the reason that a recidivist proceeding merely involves determination of the fact of prior felony convictions, and does not amount to a "retrial of th[ose] previous convictions." It goes on to stress the limited factual showing that must be made in support of a recidivist charge,[5] and asserts that there is no danger in this case that confidential information could be used to Keenan's detriment.

Although they reach different conclusions, all parties agree that resolution of the present question is governed by Rule 1.9(a) [6] and the analytical framework set forth in *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993). In syllabus point

present case. This deficiency of the record need not detain us, however, as it is undisputed that Prosecutor Blake represented petitioner with respect to at least one of the predicate felonies cited in the recidivist information.

5. *See State v. Masters*, 179 W.Va. 752, 755, 373 S.E.2d 173, 176 (1988) ("Two key elements of a recidivist proceeding are proof of the prior conviction, and proof that the defendant is the person who was convicted of that felony.").

6. Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

two of *McClanahan,* we summarized that "Rule 1.9(a) ... precludes an attorney who has formerly represented a client in a matter from representing another person in the same or a substantially related matter that is materially adverse to the interests of the former client unless the former client consents after consultation." As we later stressed in *Lawyer Disciplinary Bd. v. Printz,* 192 W.Va. 404, 452 S.E.2d 720 (1994) (per curiam),

> Rule 1.9 is very concise and unambiguous. A determination of violation is not based upon prejudice to any party, upon the efforts of the attorney to avoid unethical representation, upon the timely action of the State Bar, or upon a simple appearance of impropriety. Instead, the rule unequivocally states that if the two representations involve the same or substantially related matter and the interests of the two clients are materially adverse, an ethical violation will occur, absent former client consent following consultation.

*Id.* at 408, 452 S.E.2d at 724.

Although this Court has applied Rule 1.9(a) on a number of occasions, we have never attempted to define the contours of the substantial relationship standard with any tangible precision. This is not surprising, since as one scholar has remarked, "the substantial relationship standard has sometimes proved much easier to recite than to describe accurately or to apply confidently." Charles W. Wolfram, *Former–Client Conflicts,* 10 Geo. J. Leg. Ethics 677, 680 (1997) (footnote omitted). We have instead been content to merely recite the somewhat obvious proposition that "[u]nder Rule 1.9(a) ... determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analysis of the facts, circumstances, and legal issues of the two representations." Syl. pt. 3, in part, *McClanahan.*[7]

As this Court's past cases attest, however, the primary focus of the substantial relationship test is on the potential danger that an adverse relationship with a former client may jeopardize the confidentiality of information communicated during the prior representation. In this regard, Rule 1.9(a) is premised "not only upon the attorney's duty of fidelity and loyalty to his client, but also upon the attorney-client privilege, which precludes the attorney from disclosing or adversely utilizing information confidentially disclosed by his client." *McClanahan,* 189 W.Va. at 293, 430 S.E.2d at 572. We explained in *State ex rel. Ogden Newspapers, Inc. v. Wilkes,* 198 W.Va. 587, 482 S.E.2d 204 (1996) (per curiam), that

> The rationale behind ... [Rule 1.9] is well grounded: a client, in order to receive the best legal advice, should be allowed to be assured that any private or personal disclosure made to her lawyer will be kept in the strictest confidence.... A sacred aspect of the legal profession is that a client must be able to depend on their lawyer; that a client may confer with their lawyer with the "absolute assurance that that lawyer's tongue is tied from ever discussing it." .... Anything less than the strictest safeguarding by the lawyer of a client's confidences would irreparably erode the sanctity of the lawyer-client relationship.

*Id.* at 590, 482 S.E.2d at 207 (citation omitted).

In 'line with this emphasis on the possibility that a subsequent adverse representation may endanger the confidences of a former client, courts applying the substantial relationship test often undertake an abstract inquiry into whether confidential information derived from the representation of the former client might possibly have a bearing upon the present adverse matter. As the Seventh Circuit Court of Appeals stated in *Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221 (7th Cir.1978):

> [T]he determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given

---

7. We made this statement in *McClanahan* merely to distinguish our approach from that of those few jurisdictions which narrowly define a substantial relationship on the basis of whether the issues involved in two representations are identical or nearly identical. *McClanahan,* 189 W.Va. at 293, 430 S.E.2d at 572.

to the attorney in relation to the subsequent matter in which disqualification is sought. The rule thus does not necessarily involve any inquiry into the imponderables involved in the degree of relationship between the two matters but instead involves a realistic appraisal of the possibility that confidences had been disclosed in the one matter which will be harmful to the client in the other . . . . [I]t is not appropriate for the court to inquire into whether actual confidences were disclosed.

*Id.* at 224; *see Ogden Newspapers,* 198 W.Va. at 591, 482 S.E.2d at 208 ("our task is to concentrate on the factual contours of the transactions or matters at issue and to ask whether the lawyers would have or reasonably could have learned confidential information in their work . . . [for their previous client] that would be of significance in their representation of their present clients").

The recently adopted Restatement (Third) of the Law Governing Lawyers takes this approach:

Unless both the affected present and former clients consent to the representation . . . , a lawyer who has represented a client in a matter may not thereafter represent another client in the same or a substantially related matter in which the interests of the former client are materially adverse. The current matter is substantially related to the earlier matter if:

(1) the current matter involves the work the lawyer performed for the former client; or

(2) *there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client,* unless the information has become generally known.

Restatement (Third) of the Law Governing Lawyers § 132 (2000) (emphasis added).[8]

 This Court's past application of Rule 1.9(a) is entirely in accord with the Restatement position, and we therefore hold

that under West Virginia Rule of Professional Responsibility 1.9(a), a current matter is deemed to be substantially related to an earlier matter in which a lawyer acted as counsel if (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known. "Once a former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney as this will be presumed." Syl. pt. 4, *McClanahan, supra.*

In the instant case, the circuit court took the position that the recidivist proceeding did not involve privileged information because evidence of Keenan's former convictions was a matter of public record. While we do not question the fact that petitioner's former convictions are a matter of public record, we cannot discount the substantial risk that confidential information derived from the prosecutor's former representation may have some bearing upon the instant recidivist proceeding, including the prosecutor's underlying decision to seek such sentence enhancement.

Other jurisdictions take a similarly cautious approach as to the potential that confidential information may come into play during habitual criminal or sentence enhancement proceedings. In *State ex rel. Meyers v. Tippecanoe County Court,* 432 N.E.2d 1377 (Ind.1982), the Indiana Supreme Court held that a lawyer who had represented the defendant in connection with two previous convictions was disqualified from prosecuting his former client where the previous convictions were used for sentence enhancement. 432 N.E.2d at 1378–79. As this Court is required to do under Rule 1.9(a), the *Tippecanoe* court took the approach that the prosecutor was

---

**8.** Subsection (1) of this Restatement provision prohibits a lawyer from undertaking a representation that involves an attack on the work that was performed for a former client. Our past cases are consistent with this approach. *See,*

*e.g., West Virginia Canine College, Inc. v. Rexroad,* 191 W.Va. 209, 213–14, 444 S.E.2d 566, 570–71 (1994) (finding no substantial relationship where lawyer's work for former client was not implicated in adverse representation of present client).

subject to disqualification if "the controversy involved in the pending case [was] substantially related to a matter in which the lawyer previously represented another client." *Id.* at 1378 (citations omitted). The court then went on to find a substantial relationship between the two representations:

In this case, it appears that nothing in [the prosecutor's] representation of the accused in the two prior theft cases would have any relation to the present theft case. However, the habitual offender charge is based upon the same two prior theft cases in which [the prosecutor] was involved. Therefore, there is a substantial relationship involved. Although it is true, that the fact of the defendant's prior convictions are a matter of public record, *we cannot say without speculation that the prosecutor's knowledge of those prior cases will not actually result in prejudice to defendant.* The public trust in the integrity of the judicial process requires us to resolve any serious doubt in favor of disqualification. The trial court properly held that [the prosecutor] must be disqualified in this case.

*Id.* at 1379 (emphasis added).

The Arizona Supreme Court took a similar approach in *In re Ockrassa*, 165 Ariz. 576, 799 P.2d 1350 (1990), which involved a disciplinary proceeding commenced against a prosecutor who had failed to disqualify himself from prosecuting his former client. While employed as a public defender, Ockrassa had represented a client in three DUI cases resulting in convictions. Ockrassa was subsequently hired as a prosecutor and was assigned to prosecute his former client, "who was charged with DUI as a third offense

within the preceding 60 months." 165 Ariz. at 576, 799 P.2d at 1350. In the course of prosecuting his former client, Ockrassa alleged the prior DUI convictions for enhancement purposes. The former client requested that Ockrassa disqualify himself, but Ockrassa refused, arguing that he did not violate Arizona Rule of Professional Conduct 1.9[9] because the prior DUI convictions were not substantially related to the case he was prosecuting. The Arizona Supreme Court disagreed, stating that "[t]he validity of [the] prior convictions was directly in issue." 165 Ariz. at 578, 799 P.2d at 1352. The *Ockrassa* court further held:

[W]e do not believe that, in the context of multiple DUI offenses, a "substantial relationship" is established only if the prior conviction is an element of the subsequent offense. One of the aims of ER 1.9 is to protect the client.... Respondent's conduct in prosecuting [his former client] created a substantial danger that confidential information revealed in the course of the attorney/client relationship would be used against [the former client] by ... his former attorney.

*Id.*[10]

■ This Court agrees that in cases such as these it is impossible to completely discount the possibility that confidential information derived from a lawyer's previous representation on the predicate convictions could not be used against a former client during recidivist proceedings. This is particularly true with respect to the decision to file a recidivist information in the first instance. While we do not go so far as to say a prosecutor is forever precluded from bringing charges against a former client because

---

**9.** Arizona's Rule 1.9 is identical to its West Virginia counterpart.

**10.** Our research shows that there is a split of opinion on the present issue. *See generally* Allen L. Schwartz & Danny R. Veilleux, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused,* 42 A.L.R. 5th 581, 631–41 (1996). Contrary to the stance taken by courts in Arizona and Indiana, other jurisdictions take the position that a prosecutor is not disqualified from introducing evidence of a former client's prior convictions during habitual-offender or sentence-enhancement proceedings, reasoning that there is no risk that

confidential information could be used to the detriment of the defendant. *See, e.g., Crawford v. State,* 840 P.2d 627, 637–38 (Okla.Crim.App. 1992); *State v. Puckett,* 691 S.W.2d 491, 494 (Mo.Ct.App.1985); *Williams v. State,* 278 Ark. 9, 13, 642 S.W.2d 887, 890 (1982); *Cole v. Commonwealth,* 553 S.W.2d 468, 472 (1977). We disagree with these cases, particularly insofar as they fail to fully appreciate the possibility that the prosecutor's knowledge of confidential information derived from past representation of the defendant may influence the decision of whether to seek enhanced sentencing.

of the possibility that confidential information may inform the prosecutor's charging decision, the circumstance we face here, where the prosecutor represented the defendant in connection with the predicate convictions, simply raises too great a danger that a client's confidences may be betrayed. The Court therefore holds that a prosecutor is disqualified from representing the State in a recidivist proceeding conducted pursuant to W. Va.Code §§ 61–11–18 & –19, where such lawyer acted as defense counsel in connection with the prior felony convictions that are the basis for such proceeding.

■ Thus, contrary to the stance taken by the circuit court, we find that the Fayette County Prosecutor's office was disqualified from initiating recidivist proceedings in the present instance, notwithstanding the fact that neither Prosecutor Blake nor Assistant Prosecutor Harris were directly involved in the sentencing phase of the case. *See* syl. pt. 1, *Moore v. Starcher*, 167 W.Va. 848, 280 S.E.2d 693 (1981) ("As a rule, the disqualification of a prosecuting attorney operates to disqualify his assistants.").

## B. *Validity of Recidivist Information*

Having found merit in Keenan's argument that the prosecutor who submitted the recidivist information was imputedly disqualified from undertaking such action, the Court must still determine the appropriate remedy for the violation.

Keenan contends that the disqualification renders the present information invalid, based largely upon our decision in *Farber v. Douglas*, 178 W.Va. 491, 361 S.E.2d 456 (1985). In *Farber*, the Court held that a prosecutor should have disqualified himself from seeking an indictment for false swearing against a defendant whose alleged conduct arose in connection with a civil case in which the prosecutor was an adverse party. *Id.* at 496, 361 S.E.2d at 461. As to the remedy for such conduct, the *Farber* Court concluded that "[s]ince the prosecutor should have disqualified himself as a matter of law

from seeking this indictment, his presence before the grand jury in this matter was unauthorized and vitiates the indictment." *Id.; see also State ex rel. Knotts v. Watt*, 186 W.Va. 518, 520–21, 413 S.E.2d 173, 175–76 (1991). Thus, Keenan proposes that we treat the instant recidivist information no different than an indictment.

Respondents counter by pointing out that this Court has more recently signaled a retreat from the hard line espoused in *Farber*. Specifically, respondents refers the Court to the approach taken in *State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 430 S.E.2d 569 (1993), where, after determining that a prosecutor who had previously represented the defendant in a divorce action was subsequently disqualified from prosecuting the former client for the malicious assault of her husband because of the possibility that confidential information could be used in the prosecution, we chose the less drastic remedy of prohibiting trial pending the appointment of a special prosecutor. *Id.* at 296, 430 S.E.2d at 575. *McClanahan* quoted with approval language from the Maryland Court of Appeals' opinion in *Lykins v. State*, 288 Md. 71, 415 A.2d 1113 (1980), to the effect that

> " 'the proper action to be taken by a trial judge, when he encounters circumstances similar to those in the case at bar which he determines to be so grave as to adversely affect the administration of justice but which in no way suggest the bringing of a prosecution for improper motives ... *is to supplant the prosecutor, not to bar the prosecution....*' "

*McClanahan*, 189 W.Va. at 296, 430 S.E.2d at 575 (quoting *Lykins*, 288 Md. at 85, 415 A.2d at 1121) (emphasis in *McClanahan*).

We need not resolve this apparent inconsistency in our prior case law, since here we are dealing with a criminal information rather than a grand jury indictment. In this context, where the decision to file an information is entirely in the hands of the prosecutor,[11] there is an even greater likelihood

---

11. While it is true that corrections officials are authorized by W. Va.Code § 62–8–4 (2000) to file a recidivist information after a defendant has been placed in a state correctional facility, such

parallel authority does not negate the requirement that the charging official should not be in a position to use confidential information derived from prior representation of the defendant. In

that the charging decision was substantially influence by the ethical violation.

In *Nicholas v. Sammons,* 178 W.Va. 631, 363 S.E.2d 516 (1987), this Court articulated two general policy considerations that underlie the necessity of disqualification. First, we stressed "the universally recognized principle that a prosecutor's duty is to obtain justice and not simply to convict." *Id.* at 632, 363 S.E.2d at 518. In this vein, the *Nicholas* Court quoted from *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977):

> "The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law."

*Nicholas,* 178 W.Va. at 632, 363 S.E.2d at 518 (quoting syl. pt. 3, *Boyd, supra*). The second policy basis for prosecutorial disqualification identified in *Nicholas* concerned the desirability of promoting public confidence in the criminal justice system: "[I]f a prosecutor has a conflict or personal interest in a criminal case that he is handling, this can erode the public confidence as to the impartiality of the system." 178 W.Va. at 632, 363 S.E.2d at 518.

In our view, these policy rationales also necessitate requiring dismissal of an information that has been filed by an otherwise disqualified prosecutor. In particular, public confidence in the criminal justice system would be significantly impaired if we were to allow a charging decision to stand that had been made by a prosecutor who labored under a conflict of interest. As the Arizona Supreme Court stated in a nearly identical

case, " '[w]hat must a defendant and his family and friends think when his attorney ... goes to work in the very office that is prosecuting him.' " *State v. Hursey,* 176 Ariz. 330, 333, 861 P.2d 615, 618 (1993) (quoting *State v. Latigue,* 108 Ariz. 521, 523, 502 P.2d 1340, 1342 (1972)).

 The Court therefore holds that where a recidivist proceeding has previously been initiated against a criminal defendant by an information filed pursuant to W. Va. Code §§ 61–11–18 & –19, and it is later determined that the prosecuting attorney who initiated the charge was disqualified from acting in the case at the time such instrument was filed, the recidivist information is invalid and may not serve as a basis for further proceedings. Consequently, we are compelled in this case to grant extraordinary relief prohibiting any further action on the pending recidivist information.[12]

## IV.

## CONCLUSION

For the reasons stated, the requested writ of prohibition is grant, and the Circuit Court of Fayette County is hereby prohibited from proceeding further upon the recidivist information previously filed against petitioner Keenan by the Fayette County Prosecutor's office.

Writ of prohibition granted as moulded; Writ of mandamus denied.

Justice DAVIS, concurs in part, and dissents in part joined by Justice MAYNARD.

DAVIS, J., concurring in part and dissenting in part:

(Filed Dec. 10, 2001)

In this writ of prohibition proceeding the defendant below, Mr. Keenan, challenged the

---

the unlikely event that an information were filed under the authority of a corrections officer who had a relationship with the defendant similar to that of the prosecutor in this case, disqualification would likewise be required.

12. Keenan also asserts that the recidivist information currently pending against him should be

dismissed on the ground that because it was filed six days after conviction, it was not presented "immediately upon conviction" as required by W. Va.Code § 61–11–19. Because we grant prohibition relief on another ground, we do not address this issue.

trial judge's appointment of a special prosecutor to try a recidivist information against him. Mr. Keenan argued that because the prosecuting attorney who had actually filed the recidivist information once represented him on one of the charges in the information, the very act of filing the information was invalid. The majority opinion has concluded that a prosecutor who once represented a defendant on a charge that forms the basis of a recidivist information can neither file the information nor prosecute the information. I concur in the majority's ruling that, under the above set of facts, a prosecutor may not try such an information. However, for the reasons outlined below, I dissent from the majority's decision that the prosecutor may not file an information under the circumstances presented by this case.

**1. *Filing a recidivist information does not compromise a prior attorney-client relationship.*** The majority opinion contends that allowing a prosecutor to file a recidivist information under the facts of this case "raises too great a danger that a client's confidences may be betrayed." I believe the opinion unnecessarily inflates what actually takes place and is disclosed when filing a recidivist information.

One of the requirements for establishing privileged communication between an attorney and client is that "the communication between the attorney and client must be intended to be confidential." Syl. pt. 2, in part, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979). All information required to draft a recidivist information pertains to "public" information. That is, a recidivist information contains the name of a person and crimes for which the person was allegedly convicted of committing. A prosecutor, who formerly represented a defendant subject to a recidivist prosecution, is not disclosing any confidential or privileged details by stating in the information such public material.[1]

**2. *In order to file a recidivist information a prosecutor has to disclose his or her awareness of prior charges.*** Although the majority opinion presents an intuitively logical analysis, that analysis contains a flaw which could be exploited by defense counsel.

Under the reasoning of the majority opinion, a prosecutor is prohibited from filing a recidivist information against a defendant if he or she previously represented the defendant on one of the underlying charges. The majority opinion contends that a prosecutor may rely on confidential information in bringing the recidivist information. This reasoning leads to the illogical result that a prosecutor will also be prohibited from alerting the trial court that a recidivist information should be filed against a defendant and that a special prosecutor should be appointed. That is, in order for the recidivist information to be filed, someone must bring the issue to the trial court's attention. Obviously, the defendant will not disclose such information. The moment the prosecutor alerts the trial court that a recidivist information needs to be filed, the prosecutor divulges information pertaining to a prior crime committed by the defendant.

The point is simple. The facts which a prosecutor would be forced to disclose to a trial court in order to have a special prosecutor appointed to file a recidivist information are the exact same facts that will be placed in the recidivist information by a special prosecutor. Accordingly, criminal defense lawyers will necessarily, and under the majority opinion in this case correctly seek the dismissal of a recidivist information filed by a special prosecutor. This scenario will occur because the facts included in a recidivist information filed by a special prosecutor will have been initially disclosed by a prosecutor who, under the majority opinion, is now prohibited from having *any* role in the matter by virtue of his or her prior representation of the defendant.

**3. *The majority opinion erects a procedural bar to bringing late-term recidivist information prosecutions.*** The majority decision in this case was reached without care-

---

1. This situation is distinguishable from a prosecutor who discloses information about a former client to a grand jury in order to obtain an indictment. In that situation, the prosecutor would in fact be divulging privileged communication of matters that are not known to the public.

ful attention to the different scenarios that are possible when bringing a recidivist information against a defendant. A monumental scenario overlooked by the majority opinion concerns time constraints involved when bringing a recidivist information. Statutory time constraints are imposed upon prosecutors seeking a recidivist information against defendants. This Court recognized those time constraints in syllabus point 3 of *State ex rel. Housden v. Adams*, 143 W.Va. 601, 103 S.E.2d 873 (1958) as follows:

> A person convicted of a felony cannot be sentenced under the habitual criminal statute, [W. Va.] Code § 61–11–19, unless there is filed by the prosecuting attorney with the court *at the same term, and before sentencing,* an information as to the prior conviction or convictions and for the purpose of identification the defendant is confronted with the facts charged in the information and cautioned as required by the statute.

(Emphasis added).

Moreover, in *State v. Cavallaro*, 210 W.Va. 237, 557 S.E.2d 291 (2001) (per curiam), the defendant was convicted of a felony on June 1, 2000. The conviction occurred at the end of the term of court. The prosecutor filed a recidivist information against the defendant immediately after the jury returned its verdict. However, the trial judge decided to delay arraigning the defendant on the information until the following week, which began a new term of court. The trial court arraigned the defendant at the new term of court on June 6, 2000. The defendant was eventually convicted by a jury on the recidivist charge and sentenced to life imprisonment. He appealed arguing that the recidivist conviction was invalid as he was not called upon to plead to the recidivist information during the same term of court in which the underlying conviction was obtained. This Court agreed with the defendant that, "[p]ursuant to *Housden*, the trial court was without jurisdiction ... to permit the prosecution and sentence of [the defendant] on the recidivist informa-

tion." *Cavallaro*, 210 W.Va. at 239–40, 557 S.E.2d at 293–94.

In the instant proceeding, the majority opinion has created a situation whereby a recidivist information cannot be prosecuted in late-term *Cavallaro* type cases, only because there will be insufficient time to locate and appoint a special prosecutor before a new term of court begins.[2]

4. *The procedure that should have been imposed.* As previously indicated, I agree with the majority opinion that a prosecutor should not be allowed to actually try a recidivist information against a defendant that he or she has represented on one of the convictions that formed the basis of the information. After this point, I differ with the majority. Because of the potential problems I have outlined above, I would permit a prosecutor to file a recidivist information and require the defendant to plead to that information.

The procedure I suggest would require the prosecutor to inform the court and defendant of the prior representation before the defendant is arraigned. Once this disclosure is made, the court should instruct the defendant that, because of statutory time constraints, the defendant will be arraigned on the prosecutor's information. The court should instruct the defendant that even if he or she wishes to plead guilty, he or she may plead not guilty and a special prosecutor would thereafter be appointed to accept a guilty plea. Further, if the defendant wishes to plead guilty, he or she may do so; but, a special prosecutor would be appointed for purposes of sentencing. Finally, if the defendant intends to plead not guilty, then such a plea should be entered and a special prosecutor appointed to try the case.

Based upon the foregoing, I respectfully concur in part and dissent in part from the majority opinion. I am authorized to state that Justice Maynard joins me in this concurring and dissenting opinion.

---

2. Obviously, the problem I am addressing will only occur in those situations where a prosecutor has previously represented a defendant on an underlying criminal charge that forms the basis of a recidivist information.